Wheelee, D. J.
This cause has now been heard upon the report of the master, and exceptions thereto as to the liability of the defendant James;'and upon the stipulations under which the other defendants became parties, and by which their rights, as between themselves and the plaintiff, were submitted to the court, and the evidence in support of their respective claims as to those rights.
From the report it appears that the defendant James became postmaster at the city of New York on the first day of April, 1873, while the patent in suit was owned by Helen M. Ingalls, and commenced using the patented invention, and has ever since continued the use in performance of his duties; that on the second day of January, 1877, she conveyed the patent to the plaintiff, and assigned to him her claims for past infringement; and that the gains and profits to the defendant James, in the saving of salaries of clerks to perform the duties required of him by the post-office department, have been $63,000, due to his infringement.
The principal and controlling questions arising upon the report and exceptions are whether the plaintiff is entitled to recover in this suit as well for the infringement before the assignment to him as for that after; and whether the defendant James is liable to account for the gains and profits received by him as postmaster, either as such or as damages.
It is not pretended, by or on behalf of the defendant, but that an assignee of such claims may maintain a suit upon them in his own name in equity, (2 Story’s Eq. § 1007,) but it is insisted that the bill in this cause does not cover such claim, and that the evidence does no't show an assignment of such claim from Miss Ingalls to the plaintiff. It is true, *340 as was stated when this cause was decided on the former hearing, that the pleader does not appear to have framed his bill with that aspect in mind; but what was said then was not said upon examination and deliberation, as a full disposition of the question, but only in passing, as illustrating the other question then being considered, so the question is open now whether the bill is sufficient to cover that claim.
As to that the bill sets forth the infringement by the defendant while the patent was owned by Miss Ingalls, and sets forth in hcec verba the assignment from her to the plaintiff of the patent; also of “all the. right, interest and claim for and to the past use of said invention and improvements under the said letters patent;” and besides praying for an injunction and for an increase of damages, “in addition to the profits and gains to be accounted for by the defendant,” has a prayer for “such other and further relief as shall be agreeable to equity.” This, meagerly, it is true, but after all substantially, sets forth the claim and assignment, and a prayer for relief, as applicable to that as to the other part of the case. Perhaps there should be a special prayer for an account as to either aspect, but if one is required it is quite strongly hinted at if not very aptly inserted. The proof of the assignment consists of the instrument set forth, and that seems to be amply sufficient to cover this claim. The plaintiff is entitled to recover for the whole time, if any one is, as the case now stands, and it appears that he can now recover it in this suit, if anywhere, without doing violence to any of the settled rules of pleading.
The other is much the more important question. Whatever question there might be if the subject was new, it now seems to be settled that savings in cost by infringement of a patent may be recovered as profits. Cawood Patent, 94 U. S. 695; Elizabeth v. Pavement Co. 97 U. S. 126. The defendant saved the sum named by using the patented invention. It is said that the master erred, because the defendant might have used another form of stamp, which would not have been an infringement, and that the saving by-using the patented invention, instead of that, would have *341 been much less than tbe saving reported. It does not appear, however, but that such use of the other form would have been an infringement; and, if that appeared, it appears that the other form was riot known to the defendant, and that the saving reported was, in fact, saved by substituting the patent inprovement for what was known and would probably otherwise have been used. The saving, therefore, appears to be wholly due to the infringement.
It is said, too, that this patent is for a device that can only be used in the postal service, which is wholly monopolized by the government of the United States, which could send letters without postmarking them at all, or lessen the frequency of the mails, so that the postmarking could be done separate from the cancellation of the stamps by the old method, without increase of clerical force, at its pleasure, thus leaving this patented invention subject as to use or value entirely to the will of the post-office department, so that the use of it in the postal service would not deprive the owner of any opportunity to have it used otherwise, and could not damnify him, and that, therefore, no damages can be recovered in this case; and that no profits can be recovered because there is no party before the court, or- that can be brought before the court, who has received any. If it was true that because those who can make use of a patented invention could also do without it, would show that no injury resulted to the owner of the patent from such use, and cut off all claim for damages, there are probably few inventions that would sustain claims for damages at all. People could do as was done before the discovery, and leave the inventor to the enjoyment of his invention by himself.
But the master has not reported any damages beyond the profits, and it does not seem that the defendant can be held liable for damages if he cannot be for profits, unless it may be for taking the profits and placing them beyond the reach of the plaintiff. The post-office department required the mails to be sent with certain frequency, and that the postage be paid by stamps on letters, and that the letters should be postmarked and the stamps cancelled separately, and required that the *342 defendant should do this at the New York office, either himself or hy the employment of clerks. The defendant says in his testimony that the clerks are paid by the government. This is doubtless true, in practical effect, so far as he is concerned; still, it is to be presumed that the business is done according to the law, and he probably did not intend to testify that it was in any respect clone contrary to the law. The law is that the postmaster general may allow to the postmaster at New York city, and to certain others, out of the surplus revenues of theirr-espective offices — that is to say, the excess of box rents and commissions over and above the salary assigned to the office — a reasonable sum for the neeesssary cost, among other things, of clerks, to be adjusted on a satisfactory exhibit of the facts. Eev. St. § 3860.
The defendent is, therefore, to be taken to have made this saving out of moneys actually received into his hands from the profits of his office. He saved it by using the invention in the performance of duties which he was required to do, and had just so much more money left in his hands by reason of the imfrimgament when the duties were done. He did this as postmaster, but he was not obliged to do it. He could have refused the office, or resigned it, or have let this invention alone. He was not subject to any restraint, physical or moral, that he could not make subservient to his own choice. His choice was to use this invention and make this gain. When made it belonged to the orator. He paid it over to the government, and it passed beyond his reach and the orator’s, unless it is recovered in this suit and reimbursed to him under the law. He has not these profits now, and would not have them if he had cast the money into the sea; he has had them as he would have had them then. The situation of the defendant is very different from that of the city of Elizabeth, in Elizabeth v. Pavement Co. 97 U. S. 126. The city had not saved or made anything by the infringement, and was not liable for profits in any view, whether any one else was or not, and never had been. Here the defendant has paid over to the government what belonged *343 to the owner of the patent, hut that is no just answer to the claims of the owner now belonging to the orator.
Justice can only be done by requiring the defendant to restore the gains to those to whom they belong, and leave him to be protected as the law provides, and in doing this no injustice will be done to any one.
That his official character did not excuse the infringement has already been held, upon what seems to be abundant authority, in this case. If he is liable as an infringer as if he were an ordinary individual, he must be liable to the extent of the consequences as an ordinary individual would be, without regard to his reckoning over with the government. His official character is not any shield against the owners of the patent, although it may be a source of indemnity against the consequences.
The other questions relate to who, as between themselves, have the right to recover what is recovered, or the right to control the disposition of what is recovered, in which, apparently, the defendant James has no interest. These questions are of two kinds, one of the kinds is of questions relating to the right when the suit was commenced; the other, relating to rights since acquired. It is said by counsel for some of the claimants that this court has not jurisdiction of all these ■questions, because some of them rest upon contracts between the parties not citizens of different states, and do not involve any question under the patent laws of the United States. The suit was brought by the plaintiff alone against the defendant James alone. Objection was made by the defendant that Charles Eddy was an owner of an interest in the patent, and that the suit could not properly proceed without him; whereupon Eddy appeared and became a party to the suit, under a stipulation stating that he claimed that his rights were fixed and determined by an assignment of one-third of the patent to him, and a contemporaneous agreement, dated October 23, 1869; and the plaintiff that they were determined by an agreement in writing among the o'wners of the patent, dated October 7, 1871, and that the cause should proceed upon the evidence taken, unless the court should oth *344 erwise direct, to a decree ascertaining the rights and interests of Eddy.
This agreement, as to what the court should decide, did not enlarge what would have been before the court with Eddy as a party defendant, without such an agreement, for it would all the while be necessary to determine his rights in order to settle what would be left to the plaintiff as the foundation of any decree that might be made in his favor. The court has directed further evidence to be taken as to whether the instrument of October 7, 1871, is still in force, or'has been cancelled, and such evidence has been taken. Eddy was a trustee for Jacob Shavor and Albert C. Corse. Since the commencement of the suit the personal representatives have conveyed his title, Corse has conveyed his, and Eddy and Corse have made an assignment for the benefit of creditors, which the assignees, and those claiming under them, insist carried the patent, and Eddy insists that it did not.
It is quite obvious from this statement that all these questions are questions of title to the patent which arise under the patent laws. The whole question as to the instrument of October 7, 1871, according to the elaims of counsel on each side of that question, is as to whether it affected the title by operating to convey a part or not, which is necessarily a question of title; and it seems to be agreed on all hands that if it did not affect the title the question as to cancellation of it afterwards would be quite different from what it would be if it did; for if it conveyed title cancellation of it would not re-invest the title, and if it was only an executory agreement as to the division of money it might well be cancelled by the parties to it. And if the court is to take notice at all of rights acquired since the suit was brought, those rights arise upon the acquisition of title, if they arise at all, so -that all questions concerning them arise upon the title to the patent, and the right to recover for. an infringement of it under the patent laws of the United States. It has never been doubted but that the circuit courts have jurisdiction of all such questions, whatever the doubts and decisions may have been when neither the title itself, nor any question as to whether there *345 was an infringement, was before the courts. Hartell v. Tilghman, 99 U. S. 547.
Conveyances pendente lite do not at all affect the litigation as between the parties to the original controversy, unless there are special statutes or circumstances to control; but courts of justice, even courts of law, and especially courts of equity, often protect the rights of the real owners to the fruits of a recovery, as against those who are nominal but not real owners, whenever their rights may have been acquired.
All parties claiming to have derived any title or right from the owners of the patent, according to the decision in the principal case since the commencement of the litigation, have become parties to the record, and submitted the evidence of their claim, and the questions arising therefrom are to be considered. This is not in anywise contrary to the stipulation made under which Eddy became a party to the-suit; for these claims all arise under the right of Eddy as reserved to him in the stipulation, and, when that right is ascertained and distinguished from the plaintiff’s, the plaintiff has no right nor apparent interest as to where it shall go — whether to Eddy himself, for himself, and those for whom he was trustee, or to those to whom he and his cestuis que trust may have conveyed that right.
As the case stands, on October 20, 1869, Norton owned and held the title to the patent. He made an agreement in writing with Eddy that he would convey one-third of it to Eddy in trust for himself, Shavor and Corse; and that $20,-000 of the first money received on account of the patents should be received by Eddy for himself and them, to settle all claims between them and Norton; and that one-third of all further receipts should be received in like manner by him, and the other two-thirds by Norton. On the same day, or on the 20th, (the copies differ as to this date, and the originals are not here,) he conveyed the patent to Miss Ingalls. The conveyance to her was not recorded until after the other, and probably was not intended to be, for she mentioned it in an agreement with W. W. Secombe, dated October 4, 1870, as having been left unrecorded for a time and afterwards re *346 corded in order that the patent might be re-issued to her; and it is not to be presumed that such a fraud was intended as would result from a conveyance of a third to Eddy after the whole had been conveyed to her. Whatever its date in fact was, whether the 20th or the 23d, it was not recorded until August 1,1870, more than three months after its date, and it became subject to the conveyance to Eddy. Eev. St. § 4898. The parties concerned appear to have understood that her conveyance was so subject.
On the fifteenth day of August, 1870, Norton made an agreement in writing with Secombe that he should have the sum of $2,500 advanced and to be advanced on account of the patent, with 10 per cent, interest, out of any sum of money paid by the postmaster general for the use of the patent, and that if Norton should succeed in obtaining the one-third interest conveyed to Eddy in trust for himself, Shavor and Corse, Secombe should have only 6 per cent, interest, but one-fourth of the patent. On the fourth day of October, 1870, Miss Ingalls made an agreement in writing with Secombe referring to this agreement between Norton and him, and ratifying and confirming it as if made by her. The patent was re-issued to her on that day, and on the fourth day of March, 1871, she conveyed to him all her right, title and interest in and to the patent in trust for herself, and the wife and children of Norton, with full power to sell and assign, and to grant licenses and manufacture under the patents, to pay the ■expenses of the trust, reserve his compensation as trustee, and pay over the balance, according to a declaration of trust-, which he then executed to her, by which he was to have two-fifths of the proceeds, and she the other three-fifths in trust for herself and the wife and children of Norton.
In this state of the title the agreement of October 7, 1871, was made and signed by Eddy, Shavor, Corse and Secombe. There had been a suit against the government in the court of claims for compensation for the use of the patent, which had failed because no contract had been proved; and the matter had been before congress for an appropriation to make compensation, which had not been disposed of by final action. *347 The meaning and effect of the agreement are to be judged of in the light of the situation. It recited that the parties to the agreement were interested in the prosecution of a certain claim against the government for the use of this invention, and stated that it was understood and agreed between them that Eddy, Shavor and Corse would “accept and receive in full payment and satisfaction of their claim and demand the sum of $30,000,” to be paid out of the moneys to be received, provided it should amount to $62,000, and a pro rata sum if it should not amount to the sum stated, with parties whose interest was $20,000, and Seeombe whose claim was $12,000. It is argued on the one hand that this was a conveyance which would cut the rights of Eddy, Shavor and Corse in the patent down to $30,000; and, on the other, that it is a mere executory agreement.
All interests in patents are assignable by instrument in writing. No particular form is required, but, still, there must be some operative words expressing at least an intention to assign, in order to constitute an assignment. There are no such words in this instrument. There is no consideration stated for their agreement to accept that sum in satisfaction, when received; there is not even an agreement to pay it. The substance is that if it is paid they will so receive it. Neither is there any consideration proved. They received no compensation or forbearance, nor Seeombe any detriment, that is shown. It would not be even an accord and satisfaction of the claim, if Seeombe had received the money, and could not even be pleaded as such, for it is a mere accord, without satisfaction, which is never a bar. It is wholly executory in character, as to whatever it applies to, depending on future events, and not presently operating on anything. But, if it was an assignment of anything, it makes no allusion to a patent further than to mention a claim for the use of a certain patented cancelling stamp, invented and patented by Norton. It is plain that the claim referred to is under the patent, but a conveyance of the claim would not carry the patent. The patent would still be left, so far as his instrument, in any view, is concerned.
*348 This agreement was held hy Secombe until the latter part of March, 1872, when, at the request of the other parties, he delivered it up to be cancelled, and it was cancelled. It was a mere agreement in the first place, and it required nothing more solemn than a mere agreement to end it. Such an agreement fully acted upon, is fully and satisfactorily proved. The conveyances afterwards, until they reached the plaintiff, were of the patent without the interests of Eddy, Shavor and Corse, and their interests remained intact as they were under the assignment of one-third to Eddy in trust, October 23,1869. It is suggested that this agreement was recorded, and that the record of it may have misled the plaintiff, but this is not at all probable, and the result is not chargeable to Eddy or his cestuis if it did. That it was recorded would not make it an instrument of title, but would only complete its effect if it was one. If the plaintiff learned of the record, he is to be taken to have learned of it as it was, and to have known that it did not affect the title.
According to these views the plaintiff is entitled to a decree for the payment by the defendant James to him of two-thirds of the sum reported by the master, namely, $42,000.
This conclusion would dispose of the whole ease as it was originally brought; but when the defendant objected that all the parties in interest were not before the court, so that complete justice could be done, and the whole controversy disposed of, he set out the conveyance to Eddy, as trustee for himself, Shavor and Corse, as showing an outstanding interest, and prayed that Eddy, as trustee, might be made a party to the cause prior to the final hearing. It was the duty of the defendant, in making that objection, to set forth what parties were wanting, that the plaintiff might supply them. This is required in pleadings at law to give the plaintiff a better writ before abating the one he has. The same is required in proceedings in equity, although not with the same strictness. Story’s Eq. PI. § 543. In complying with this requirement the defendant set forth who was lacking, and whose presence, as a party, was desired by him, namely. Eddy, as trustee, and that party was added accordingly, as he *349 had prayed. Since then all parties whose presence was desired by others have been before the court.
It is not important in equity proceedings, for every purpose, that all the parties to the controversy should be upon opposite sides in the formal pleadings. It is sufficient that they are citizens of different states, on opposite sides of the dispute, although not on opposite sides in the pleadings, for the removal of the cause to the federal courts. Meyer v. Delaware R. Con. Co. S. C. U. S., October term, 1879, (Chicago Legal News, January 3, 1880.) That the rights of the parties could be determined in the cause, notwithstanding their position, would seem to he a necessary ground to that conclusion. In this cause the pleadings cover all the grounds of claim upon and defence by the defendant, as well to that part claimed by Eddy as in respect to that claimed by the plaintiff, and the evidence has been taken in respect to all the issues made, and considered as bearing upon them. Under these circumstances, at least, it seems proper that the rights of Eddy, and of those claiming under him as trustee, to the fruits of the infringement of the defendant, should be considered and determined. All the parties except the defendant James have insisted upon this course, and he has only insisted that the proceedings should be such as to protect him from further suits for the same cause.
These proceedings, with these parties to them, appear to be ample for that purpose. Eddy was trustee by name in the conveyances for himself, Shavor and Corse. The presumption would be, in the absence of all proof, that he was trustee for himself and them in equal proportions. Whatever proof there is shows them to have been equal partners in cognate matters, and intensifies rather than rebuts the presumption. He could not be trustee for himself in any proper sense of the term, and must have been an absolute owner of his share of the third he held, or one-ninth of the whole. Shavor and Corse were equitable owners of their shares, or one-ninth each of the whole. Shavor died, and his personal representatives, by leave of court, became parties to the suit under the rights represented by Eddy. On the *350 twenty-seventh day of March, 1879, Corse assigned his right to Caroline Gr. Caswell, and she became a party in like manner. Corse and Eddy were partners with others, and they and their copartners, each as partners and as individuals, on the thirty-first day of March, 1879, assigned to J. Albert Clipperty and Charles N. Stannard “all and singular their co-partnership and individual estate and property, real and personal, goods, chattels, effects, credits, accounts, debts, dues, demands, choses in action, and property of every name and kind whatsoever, whether held by and in the name of said parties of the first part, and each and either of them, or by and in the name of any other person, for them, or either of them, except such property, if any, held or owned by said parties of the first part, individually, as is exempt by law from levy and sale under execution, ” in trust, to be converted into money for the payment of the debts of the firm and its individual members.
These assignees, assuming that the assignment covered the patent rights, have assigned them to Samuel E. Clexton, who has become a party to this suit. The personal representatives of Shavor have assigned his right to Clexton. The rights of Caroline Gr. Caswell to the share of Corse, all rights of Corse, if there were any remaining to him after his assignment to her and the assignment to trustees, and all rights acquired by Clexton through the trustees, have been transferred to Horace T. Caswell, who has become a party to this suit also. So all the rights of Corse, without reference to the fairness of his conveyance to Caroline Gr. Caswell, so near to the time of the conveyance to trustees for the benefit of creditors, and without reference to whether that conveyance would pass any of these rights, have become vested in Horace T. Caswell, and all the rights of Shavor have become vested in Clexton, and the 'only question remaining is whether the rights of Eddy passed to the assignees and thence to Clexton, or remained to himself. All these assignments covered the claims for past infringement, as well as the title to the shares of the patent.
The infringement of the defendant had been ripening into *351 a cause or causes of action all the while from the time when he began to infringe to the time of the assignment in favor of Eddy. Eddy’s right to recover upon these causes of action, so far as they had accrued up to that time, was a chose in action. Choses in action are expressly named in the assignment to trustees, and by force of those words it would carry this claim. But his title to the patent remained, and the further question is as to what became of that. The words of the assignment are probably broad enough to coyer it. Similar words were held to be sufficient for such a purpose in Railroad Co. v. Trimble, 10 Wall. 367. Still there is excepted out of the individual property of the assignors all property exempt by law from levy and sale under execution. If this means such property as is specially exempt by express provisions of the statutes, the right to the patent is not included among the classes of such property.
But the exception is not of the property exempt from statute, but of the property exempt by law. Property can be levied upon and sold under execution at all only by force of law. Such property as cannot by law be taken is by law exempt. This patent-right could not, by law, be so levied upon and sold, and was, therefore, by law exempt. This conveyance, too, is understood to be such a conveyance for the benefit of creditors as the law of New York sanctions and upholds, for appropriating the property of debtors to the payment of their debts, in place of legal proceedings, to judgment, execution and levy for that purpose. It is to be construed like other written instruments, in the light of the circumstances, and its professed object for the purpose of ascertaining the intention of the parties.
In this view it may be well understood that the intention was to place in the hands of the assignees what the creditors could otherwise reach, and to except out of this clause what they could not reach. This consideration aids the conclusion that this patent-right was excepted and not conveyed.
Probably these distinctions were not actually thought of, and, very likely, the actual effect of the instrument upon other property was not; but the instrument was properly made *352 in that way, because the assignors were willing to stand by its effect upon their property of various kinds, situated under various circumstances, whatever the effect might turn out to be; and an assignment of what by law could be taken was all the creditors had any right to claim. So Caswell is entitled to one-ninth of the whole sum reported by the master, $7,000, and Glexton is entitled also to one-ninth, and so much of the profits of one-ninth as accrued before March 31,1879, in addition; and Eddy is entitled to the profits of the same ninth which accrued subsequently to that time.
The profits allowed consist in money saved from salaries, at a uniform rate, so that the amount due to the ninth share of Eddy, for the time before March 31, 1879, and for the time subsequent, is readily computed. Eor the time before it is $6,125, and for the time subsequent $875.
Therefore, of the profits reported by the master, the orator is entitled to - - $42,000
Samuel E. Clexton to - - - - 13,125
Horace T. Caswell to 7,000
Charles Eddy to - - - 875
The defendant James has moved for a stay of proceedings in this cause, on account of a suit brought in this court against him for the same infringement, by the personal representatives of William W. Seeombe, under whom the plaintiff claims title, in which it is alleged that the title to this patent did not pass from Seeombe because the deed from him did not in terms cover it; and that, if it did, the contract pursuant to which the deed was made was that this patent should not be conveyed, and that the deed should be reformed to that extent. This motion has been heard at the same time with the exceptions to the master’s report. As the cases now stand this plaintiff cannot be affected by any parol contract between the parties to that deed, as to what it should cover. He is a purchaser for valuable consideration, without notice of any such outstanding equitable claim to the patent, if it exists. The laws relating to patents require the title to the patent to be shown by the records of the patent office, and he had a right to rely upon the title there shown. That the *353 deed did not carry this patent has already been determined in this case, upon full argument and consideration.
There is no apparent ground upon which this motion can justly he sustained, and it must he denied. .On account of the number of those found to be entitled to share in the avails of the recovery, and of the conflicting claims between them, it may he preferable to the defendant James, equally advantageous to those entitled, and perhaps more proper, as the case is made up, that he should have opportunity to make payment into the registry of the court for the benefit of those entitled, instead of being compelled to pay their shares to them severally.
The exceptions to the master’s report are overruled, the report is accepted and confirmed, and a decree ordered to he entered that the defendant James pay to the clerk of this court the sum of $63,000, mentioned in the master’s report, within 20 days from the entry of the decree, for the benefit of the parties to this suit — $42,000 for the plaintiff; $13,125 for Samuel R. Clexton; $7,000 for Horace T. Caswell; and $875 for Charles Eddy — and for execution therefor in default of such payment, and for costs to the plaintiff, to he taxed.