## LORD *vs.* CANNON.

1. An action of ejectment between citizens of the same state set out the following facts as giving jurisdiction to the circuit court of the United States, in which it was brought, viz.: The plaintiff had been adjudged a bankrupt; the land in controversy had been set apart to him as an exemption, and he had been finally discharged. Shortly before his adjudication in bankruptcy, a *fi. fa.* from the circuit court had been levied by the United States marshal, and he proceeded to sell in spite of the bankruptcy, and the purchaser afterwards conveyed the land, with a warranty of title to another:
*Held,* that the suit was one arising under the constitution and laws of the United States, and the circuit court had jurisdiction thereof.
(*a.*) The action of ejectment having been brought against the warrantee under the purchaser at the marshal's sale, and the warrantor having been notified of the suit and conducted the defence of it by attorneys, this was in effect a vouching of the warrantor, and he was bound by the judgment rendered in a subsequent suit on the warranty.
(*b.*) The cases in 99 U. S., 547, and 5 Sawyer, 39, differ from the present case.
2. The evidence to sustain the plaintiff's case for a breach of covenant of warranty of title was ample, and the judgment awarding a non-suit was error.
3. It is the duty of courts to end, and not to protract, litigation. A request to give such direction to this case as will enable the defendant to appeal to the Supreme Court of the United States must be denied. Comity to another court forbids it.

December 1, 1885.

Jurisdiction. United States Courts. Bankruptcy. Ejectment. Warranty. Judgments. *Res Adjudicata.* Comity. Before Judge SIMMONS. Bibb Superior Court. April Term, 1885.

Reported in the decision.

J. W. LINDSEY; HARDEMAN & DAVIS, for plaintiff in error, cited, on judgment of eviction binding warrantor, 1 Am. R., 191; 8 Am. Dec., 272; 4 Wall., 657; 3 *Id.*, 1, 18, 19 · 25 *Ga.*, 566; 10 *Id.*, 311; Code, §3364. Jurisdiction, when agreement or failure to plead may waive, 115 U. S., 159; 59 *Ga.*, 534; 56 *Id.*, 282; 60 *Id.*, 659; 65 *Id.*, 557; 70 *Id.*,

409; 61 *Id.*, 208; 17 *Id.*, 573; 27 *Id.*, 172; 8 *Id.*, 83; 49 *Id.*, 579; 41 *Id.*, 71; 59 *Id.*, 845; 68 *Id.*, 774; Code, §§3460, 3461; 10 Fed. R., 696; 1 Woods, 279. Jurisdiction of Federal court on matter growing out of bankruptcy, Rev. Stat. U. S., §§4972, 5045; Bump., 518; Sup. U. S. Rev. Stat., §173; Code, §5289; 111 U. S., 738; 11 Fed. R., 384; 10 *Id.*, 692, note; 12 *Id.*, 754; 14 *Id.*, 194; 4 Woods, 134, 273; 10 Blatchf., 163; 6 Wheat., 264, 379; 9 *Id.*, 738, 820; 2 Dall., 304; 1 Wheat., 304; 21 How., 506; 4 Dill., 242; 8 Fed. R., 250; 31 La. An., 363; 5 Chic. L. N., 434; 12 *Id.*, 75; 96 U. S., 199; 6 Wall., 247; 100 U. S., 258, 275; 102 *Id.*, 135; 96 *Id.*, 199; 114 *Id.*, 501; 113 *Id.*, 574; 3 Fed. R., 545; 9 Rich Eq., 521; 3 Sandf. Ch., 35; 29 Penn., 242; 6 Humph., 146; 15 Ala., 423; 7 *Id.*, 189; 23 Mo., 13; 23 Penn., 509; 32 N. H.—; 3 Bibb, 216; 12 Ind., 192; 31 Ill., 295; 8 Md., 322; 37 N. Y., 155; 9 Paige, 259; 3 Ill., 97; 22 Barb., 167; 2 Nev., 165; 1 Cow., 220; 1 Wis., 47; 2 McCord, 157; 3 Kansas, 390, 276, 3 Blackf., 376; 5 Ind., 487; 23 *Id.*, 600; 28 *Id.*, 233; 9 Port., 679; 15 Ala., 423; 7 Dana, 500; 8 *Id.*, 194; 8 Mo., 448; 20 *Id.*, 296; 25 *Id.*, 309; 43 *Id.*, 323; 25 Ill., 173; 54 *Id.*, 175; 1 Brown, 187; 25 Penn., 176; 110 U. S., 276; 4 Woods, 283.

Dessau & Bartlett, for defendant, cited, on jurisdiction of U. S. court, Rev. Stat. U. S., §§629, 630, 4979–4986; 4 Dall., 8; 94 U. S., 455; 97 *Id.*, 646; 109 *Id.*, 278; 8 Peters, 112; Bump., 371, 699, 140, 612, 608, 173. Defendant not estopped from showing judgment void, Code, §§3594, 3828; 48 *Ga.*, 50; 50 *Id.*, 271, 289; 25 *Id.*, 566; Freeman Judg., 117, 120, 547; 91 U. S., 105; 70 *Ga.*, 484; 5 Sawyer, 39; 99 U. S., 547.

Hall, Justice.

The plaintiff complains of a breach of covenant of title made to him by the defendant for two lots of land, and also for a violation of an undertaking and agreement on the part of the defendant to indemnify and save him

harmless on account of expense incurred in a suit brought for the recovery of such land, which ended in a judgment evicting him from the same.

At the hearing of this case, it was shown that the suit in which the judgment of eviction from the premises was rendered against the plaintiff by the fifth circuit court of the United States for the southern district of Georgia, was prosecuted by one Ogburn; that the defendant was notified of the commencement of this suit, and appeared by his counsel and made answer thereto, and conducted the defence to the termination of the case. The facts set out in the action of ejectment to give jurisdiction to the circuit court of the United States were, that the plaintiff therein had been adjudged a voluntary bankrupt, upon his own petition, by the district court of the United States for the southern district of Georgia; that the lands in question had, in that proceeding, been set apart to him as an exemption under the bankrupt laws of the United States, and that he had obtained his final discharge in bankruptcy; that just prior to the filing of his petition and his adjudication as a bankrupt, the lands had been levied on by the United States marshal, under an execution in favor of one Kelly against Ogburn, issuing out of the circuit court of the United States; and that, pending these proceedings in bankruptcy and notwithstanding the same, they were sold under that levy, and at that sale Cannon, the defendant in this suit, became the purchaser, and afterwards conveyed them to the plaintiff, Lord, by deed, containing the warranty of title, for the breach of which this suit is brought.

On the close of plaintiff's evidence, a motion was made to non suit the case, on the ground that the circuit court of the United States had no jurisdiction of the cause in which the judgment of eviction was rendered, because both the parties to the same were citizens of Georgia, and because its cognizance over the matter of bankruptcy ceased with the bankrupt's final discharge, which divested that court of jurisdiction over the subject-matter of the suit, and be-

cause the plaintiff's right did not arise under the constitution or laws of the United States, but existed independently; in short, that there was no question in the case to make it one arising under the constitution or laws of the United States. The motion was sustained and the case dismissed, and to this judgment exception was taken, and brought to this court by writ of error for review.

1. In the suit of Ogburn vs. Lord in the circuit court of the United States, both parties were citizens of the same state, and if this had been the only jurisdictional fact set out in the pleadings, they would have shown upon their face that the court had no jurisdiction; and if the controversy was one respecting the title to lands simply, and without more, then the same result would have followed, unless grants thereto had emanated from different states, which, in this case, was not pretended. Constitution of the United States, Article III., Section II. On neither of these grounds, therefore, was it claimed that the federal court had jurisdiction in that cause; but it is now insisted that, inasmuch as the right in controversy arose under the constitution and laws of the United States, it was properly cognizable by the courts of the United States. *Id.* The act of congress of the 3d of March, 1875, §1 (Supp. R. S. U. S., p. 173), expressly provides that the circuit court of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and arising under the constitution or laws of the United States.

The plaintiff founds the jurisdiction of the circuit court of the United States, in the case in question, on this provision of the act of congress, which, it must be conceded, is in strict pursuance, and almost in the very terms, of the constitution, and says that, inasmuch as Ogburn was adjudged a bankrupt under the laws of the United States, and as the land in controversy was contained in the proper sched-

ule attached to his petition, and was set apart as an exemption to him under that proceeding, his right to possess it arose directly under the constitution and laws of the United States, and that it is immaterial, as respects the jurisdiction, that it was levied on by a process issuing from the federal court four days previous to the adjudication upon the petition in bankruptcy, and was sold by the marshal on the second of March, nearly a month after Ogburn was adjudged a bankrupt, and was purchased at that sale by Cannon, his warrantor of the title involved in this suit, and conveyed to him in pursuance of the sale. That Ogburn was the owner of the premises, and had title thereto at the time of this levy, was not a question in issue. When the sale was made, the land was in the custody and under the exclusive control of the United States District Court sitting in bankruptcy; it was not set apart as an exemption to the bankrupt until the first day of April then next. The question, then, necessarily involved in the suit for the recovery of the possession of the premises by the bankrupt was, whether this sale divested his title and conferred it upon Cannon. It would seem, therefore, that the case he made was one arising solely and exclusively under proceedings and judgments rendered by the courts of the United States, and under and in pursuance of the constitution and laws of that government. The constitution confers upon congress power to pass uniform laws on the subject of bankruptcies throughout the United States (art. 1, sec. viii, par. 4), and the legislation of congress declares that the jurisdiction of the courts on which the power to administer this law is conferred shall be exclusive. Rev. Stat., §711, Act Congress 22 June, 1884 (Stats. at Large, vol. 18, 178); *Brady vs. Brady*, 71 *Ga.*, 71, 76, 77 and citations. We think the defendant's counsel wholly misapprehend the cases they cite to sustain the position they take, that Ogburn's suit proceeds upon his title as it existed prior to the adjudication in bankruptcy, or upon anything that occurred subsequent to his final discharge, and

that the title, as it existed before the institution of the proceedings, was not at all affected by the fact that it was set apart as an exemption after the sale to Cannon. Whether they are right or wrong in this last position, it is not necessary now to decide; it is sufficient that this was the very point in controversy, and that it was determined adversely to them by the circuit court of the United States; for, if that court had jurisdiction of the subject-matter of suit, as it will appear it had, and it determined that point against the defendant, as well as the right of the plaintiff to the thing in controversy, and no steps were taken to get rid of that judgment, then it is binding at least upon the parties to it and their privies in estate or in law. We have no power to review the judgment, and can only determine as to its effect; it is binding upon us, as well as upon all other courts, until it is reversed or set aside by the court rendering it or the appellate courts of the United States. This conclusion is, as we think, inevitable, and admits of neither question nor doubt. Was Cannon a party to this suit, legally or actually? He was the warrantor of the defendant's title; had notice of the institution and pendency of the suit involving the validity of that title, and took upon himself the burthen and duty of maintaining it. The defence was intrusted to counsel employed by him for the purpose, who doubtless rendered him all the assistance in their power; it does not appear that they failed in any duty they owed, or that they were deficient in ability or fidelity; but even if they were derelict, upon whom are the consequences of their failure to be visited—upon him, or upon the party to whom he warranted the title? To ask is to answer this question; he was, to all intents and purposes, vouched as the warrantor of the title and called on to defend this suit, and whether he acted upon the notice or not, he is bound by the judgment. "In a suit upon warranty of title to land, if it appears from the evidence that title paramount has been asserted against the warrantee, or some person claiming under him,

and that he has yielded to it, or is in a situation requiring him to yield presently, as matter of legal duty, the breach is established; and this is certainly true, if a judgment rendered, with notice to the warrantor, is relied upon." *Clements vs. Collins*, 59 *Ga.*, 124, 126, and the cases and authorities therein cited.

That the circuit court of the United States had jurisdiction to try this case as one arising under the constitution and laws of the United States, we think is evident, not only from the sections of the constitution and the act of congress of March 3d, 1875, already cited, but from many other cases determined by the circuit and district courts, as well as by the Supreme Court of the United States, and which will be found in the admirably prepared and well arranged brief of Buford M. Davis, Esquire, of counsel for the plaintiff in error. In the Factors' and Traders' Insurance Company *vs.* Murphy and another (111 U. S. R., 738), the Supreme Court held that it had jurisdiction in error over a judgment of the Supreme Court of a state in a suit by one citizen of that state against another for the foreclosure of a mortgage on real estate therein, when'the only controversy in the case was as to the effect to be given to a sale of property under an order of the district court of the United States in bankruptcy to sell the bankrupt's mortgaged property free from incumbrances. In pronouncing the judgment of the court, Mr. Justice Miller, p. 741, says: " Counsel for defendant in error deny the jurisdiction of this court, and move to dismiss the writ. But it is apparent that the only controversy in the case relates to the effect to be given to the sale under the order of the district court of the United States to sell the mortgaged property free from incumbrance. Both parties assert rights under this order and sale. Plaintiffs in error assert that the sale as made was valid, and" (the property) " being sold free from incumbrances, extinguished Mrs. Murphy's lien, as well as others. Defendant asserts that it had the effect of discharging all other liens but hers, and thus gave

Lord *vs.* Cannon.

her the exclusive paramount lien on all the property so sold. Both the parties, therefore, rely upon rights under federal authority, and as the right of the plaintiff in error was denied by the court, the writ of error lies." It is not perceived that it can make any difference, as was so strenuously contended by the able counsel for the defendant in error, that this case turns upon the appellate jurisdiction of the Supreme Court of the United States, and that his case relates to the original and concurrent jurisdiction of the circuit court with the state court, since both depend upon identically the same fact, viz., that the case must arise under the constitution or laws of the United States; nor is there any other difference between them, since both grew out of the administration of the effects of a bankrupt by.the district court, while these effects were in the custody and under the control of the court.

As before stated, the defendant in error is not aided by the cases so confidently relied on by his counsel. They cite Hartell *vs.* Tilghman, 99 U. S., 547, and Dowell *vs.* Griswold, 5 Sawyer, 39, each of which decides that a case is not within the scope of the jurisdiction of the federal courts, under the provision of the constitution and law in question, unless the very right of the party springs out of, or has its origin, in such law. In the first of these cases, the complainant, a patentee under the laws of the United States, contracted with the defendant for the right to use his patent. By the terms of the contract, he reserved the power to resume the property thus sold upon the breach of any of the material conditions of the agreement, which he alleged had taken place. A motion was made to dismiss the writ of error, because the parties to the controversy were both citizens of the same state, and the contract for the use of the patent, which the bill sought to rescind, was the right involved in the litigation, and which did not arise from or spring out of any law of the United States; and a majority of the court being of this opinion, the. writ of error was dismissed. They held that the con-

tract between the parties for the use of the patent right was quite distinct from an infringement or invasion of the right, and that the right of the parties originated in this contract, and was not for any violation of the complainant's rights under the patent; that had this been the case, then there would have been jurisdiction in the court to have redressed the wrong complained of.

Three of the judges (Chief Justice Waite, and Bradley and Swayne, J J.) dissented from the majority, and maintained the jurisdiction under the peculiar facts of the case, without, however, differing from the majority as to the correctness of the principle on which they founded their opinion. In the dissenting opinion, delivered by Mr. Justice Bradley, in which the two other judges concurred, he admits that, " it is perfectly well settled . . . that where a suit is brought on a contract of which the patent is the subject-matter, either to enforce such contract or to annul it, the case arises on the contract or out of the contract, and not under the patent laws."

The other case, Dowell *vs.* Griswold, which was decided by Deady, District Judge, is in full accord with the foregoing views, and clearly draws the distinction between rights growing out of contracts in relation to interests enacted by laws of the United States, and those immediately springing from or directly arising out of such laws. Both are well considered and ably argued cases. This was determined in 1877, and is put upon the first section of the act of congress of the 3d of March, 1875; the other was determined the following year, and each contains references to, and a review of, the cases bearing upon the distinction and point in question.

In Cohens *vs.* Virginia, 6 Wheat., 378, the Supreme Court, in construing the language of the constitution conferring jurisdiction on the federal courts, seems to have laid down a very comprehensive rule upon the subject, viz., that a case " may truly be said to arise under the constitution or law of the United States whenever its correct decision depends upon the correct construction of either," and upon

this authority, which Judge Deady says, " has never been shaken, a case which involves a question depending for its solution upon a proper construction of a law of the United States, is a case arising under such law, and therefore within the judicial powers of the national (general) government." It is not necessary to go further for reasons or authority to uphold our view. So far from sustaining, these cases overthrow the position taken by counsel for the defendant in error.

2. It follows, from the principles above set forth, that we are of opinion that the evidence, to sustain the plaintiff's case for a breach of covenant or warranty of title was ample, and that consequently there was error in the judgment awarding the non-suit, and that the exceptions thereto are well taken.

3. It is suggested that, if this case is decided against the defendant and in favor of the jurisdiction of the circuit court of the United States, in the case of Ogburn *vs.* Lord, it will cut him off from an appeal to the Supreme Court of the United States, and we are requested to give it such a direction as will enable him to avail himself of this privilege; but we cannot recognize such a rule of decision as that here invoked. It is the duty of all courts to end, and not to protract, litigation. Were we in doubt as to the principal questions involved in this controversy, as we are not, then we should hesitate to entertain this request. Some comity is doubtless due to the decisions of other courts, and some presumptions must be made in favor of their correctness. We should dislike to have any other rule applied to the jurisdiction of our own courts, and should feel bound to resist encroachments upon it, come from what quarter they might, and, therefore, we should be careful to do unto others what we would have them to do unto us. *Suum cuique tribuere,* announces the measure of right and justice to which all, under such circumstances, are entitled.

Judgment reversed.