### E. C. ATKINS & CO. v. PARKE et al.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1894.)

#### No. 118.

1. PATENTS—ASSIGNMENT—CANCELLATION.
   A clause in an assignment of a patent that, if the assignee fail to make certain statements and payments within a certain time after the same become due, the assignors shall have the right, by giving notice, to cancel the exclusive privilege and grant conferred, does not authorize a cancellation by notice given at a time when no money is due.

2. SAME—SUIT BY ASSIGNEES FOR INFRINGEMENT—CROSS BILL BY ASSIGNORS.
   On a bill by the assignee of a patent against the assignors for infringement, praying for an accounting, defaults of the assignee in not complying with conditions of the assignment and other wrongs on his part, which do not authorize a forfeiture by the terms of the contract, are not grounds for a cross bill by the assignors to cancel the assignment, or to remove the cloud on their title to the patent arising therefrom, or for other affirmative relief, where all the matters complained of may be pleaded as defenses to the original bill, and damages therefor may be considered on the accounting.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is a bill filed by E. C. Atkins & Co., a corporation created and organized under the laws of the state of Indiana, against Amos S. Parke and Sarah A. Parke, residents of Bay City, in the state of Michigan, for infringement of letters patent No. 333,540, issued to Sarah A. Parke, January 5, 1886, for swaging saw teeth, and for an accounting for profits and damages.

The bill avers that on the 30th of January, 1886, the patentee constituted Amos S. Parke her true and lawful attorney, to sell saw swaging machines, and transfer territorial rights to manufacture and sell the same. On February 2, 1886, the bill avers that said Amos S. Parke, as such agent, sold and conveyed to the plaintiff the right to make and sell said machines throughout the United States, excepting the states of California and Oregon, and the territory of Washington; that all interest in said patent, excepting in said states and territory, was thereby transferred and conveyed to the plaintiff. The bill further avers that the defendants, without the consent or license of the plaintiff, and notwithstanding said grant to sell, have infringed the plaintiff's rights by making, at Bay City, Mich., saw swaging machines according to the invention of said patent, and have refused to desist from such manufacture or account for their profits and damages. The bill prays for an injunction and for an account.

The answer admits that the plaintiff is a corporation; that Sarah A. Parke is the true inventor of the patent named; that she made Amos S. Parke her true and lawful attorney; but denies that said attorney did grant and convey to the plaintiff, or its representatives or assigns, the exclusive right to make and sell said machine according to said invention. But defendants admit that on said 2d of February, 1886, they did enter into a certain contract in relation to the manufacture and sale of the improvements mentioned in said letters patent, and that a copy of said contract is attached to the answer.

The defendants deny that the plaintiff has substantially complied with the terms of said contract, and deny that, by a substantial compliance with the material conditions thereof, all right and title to said letters patent is vested in the complainant. The defendants deny that they have infringed by manufacturing said saw swaging machines, or that the plaintiff had any right or title in and to said improvements described in said letters patent at the time said bill was filed, and, at that time, deny the plaintiff had any interest in the profits of said machines, made under said patent, and deny that the plaintiff had any right to make and vend such machines.

The defendants admit that said Amos S. Parke, after the termination of the contract marked "Exhibit A," as hereinafter stated, on or about the 29th day of January, 1889, did begin to make at Bay City saw swaging machines, and has made about 60 of such machines, but deny that they were unlawfully made in violation of the plaintiff's rights.

(1) Defendants claim that said contract of February 2, 1886, was not an unconditional sale or transfer of the defendants' title, but was only a conditional sale, liable to be terminated by default of the plaintiff, at the election of the defendants.

(2) That said plaintiff was in default by failing to comply with the stipulations in said contract, and same was not in force at the time of the wrongs complained of.

(3) That plaintiff has failed to comply with the condition of said contract by neglecting to fill orders for said machines; that, on the day said contract was made, said defendants gave an order to the plaintiff for twenty-five of said machines, but plaintiff failed to fill said order until about July 8th, following, when ten of said new swages were sent; that repeated orders were sent for said machines, but not filled; and that the defendants thereby lost sales of the same, as they had contracts for the sale of the same.

(4) That plaintiff failed to manufacture said machines as fast as the demands of trade required, and as it agreed to do.

(5) That from February 2, 1886, to January 26, 1888, plaintiff had made and put on the market not to exceed 60 of said machines, and had not sent to defendants to exceed 30, though there was ready sale and an active demand for the same.

(6) That, by said plaintiff's failure to make and place said machines on the market, the defendants lost the sale of a large number, and the profits on the same.

(7) That the plaintiff made what machines were manufactured in a defective and unworkmanlike manner, so as to injure the sale of the same, and, of the 30 sent to defendants, 10 were so defective that they could not be sold, and were returned to the plaintiff; that, out of the 60 machines made and put on the market, 42 were returned, as appeared by the plaintiff's letter (marked "Exhibit B"), and the defendants charge they were returned because of defective make; that from February 2, 1886, to January 26, 1888, the defendants had orders for machines which would have been filled by machines returned if they had been well made.

(8) That plaintiff failed to promote sales by refusing to advertise; that defendants furnished cuts which were not used; that portions of said invention which related to swaging band saws' teeth were wholly omitted; that, though the plaintiff manufactured various articles in lumber and working of wood, and advertised largely, in none of said advertisements is said improvements shown.

(9) Plaintiff was interested in the Hinkly machine, used for similar purpose, and therefore did not work in good faith under said contract, but made inferior machines to retard their sale.

(10) That plaintiff has forfeited its rights, failed to make reports and pay royalties; that from the 2d of February, 1886, no report of sales was made until March 17, 1887.

(11) That on the 26th of January, 1888, the plaintiff having forfeited its rights under said contract, defendants elected and did declare the contract forfeited, by written notice served on the plaintiff.

(12) Defendants charge that plaintiff was interested in another saw swaging machine, and entered into a contract to control the machines made under the Parke patent for the purpose of preventing said machine from being put on the market, and that said contract was a fraud on its part.

(13) That, since the making of said contract, plaintiff has caused to be made and put on the market other saw swaging machines, and did all in its power to prevent the Parke machines coming onto the market.

(14) Defendants claim the patent described in No. 333,540 to be of great value and use to the public, and, if manufactured and sold, would be a source of great revenue to the defendants and benefit to the public, and, if complainant is permitted to prevent the manufacture and sale, defendants will be irreparably injured.

Defendants submit the plaintiff is entitled to no relief, and pray for the same benefit by their answer, as though they had filed a cross bill or a demurrer.

Chester Bradford, for appellant.

James Van Kleeck, for appellees.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

RICKS, District Judge, after stating the case as above, delivered the opinion of the court.

This case was first heard upon the pleadings and evidence by Circuit Justice Brown, while district judge for the eastern district of Michigan. In an oral opinion, which we find printed in the record, he held that the written instrument of February 2, 1886, set forth in the bill, was an assignment of the patent, and vested the legal title thereto in the assignee, which is the plaintiff corporation, described as E. C. Atkins & Co. He further proceeded to consider whether, without a reassignment or a cancellation of the agreement by a judicial decree, the assignors could claim that they were exonerated from liability as infringers. His conclusion was that:

"Where a patentee contracts for the use or sale of the patented article upon the payment of certain royalties, that he cannot, as against such licensee,

maintain a suit for infringement simply upon the ground that the licensee has failed to pay the agreed sum. It was said in Hartell v. Tilghman, 99 U. S. 547–555, that in such cases the patentee can establish his royalty, and sue at law, and recover every month or every year for what is due. He may also file a bill in chancery to have the license annulled or set aside, because of the difficulties placed in the way of its fair execution by the defendant. It was held, however, that he could not abandon the contract, treat it as a nullity, and charge the defendants as infringers liable as trespassers under the act of congress. 'We do not agree,' says Mr. Justice Miller, 'that either party can, of his own volition, declare the contract rescinded, and proceed precisely as if nothing had been done under it. If it is to be rescinded, it can only be done by a mutual agreement, or by the decree of a court of justice. If either party disregards it, it can be specifically enforced against him, or damages can be recovered for its violation; but, until so rescinded or set aside, it is a subsisting agreement, which, whatever it is or may be shown to be, must govern the rights of these parties in the use of complainant's process, and must be the foundation of any relief given by a court of equity.' * * * These authorities demonstrate that, if this had been a mere license to the plaintiff, the defendants could not have treated it as a nullity, by reason of the failure of the plaintiff to make reports or to conform to the contract in other particulars, and treat it as an infringer. Much less could it do so where it conveyed the legal title to the party by assignment to the plaintiff, since such breach would not operate in any way to revest the legal title in the defendants, or enable them to maintain suit upon the patent."

The learned judge then expressed a doubt whether, in view of the breaches of the agreement made by the assignee, and after written notice of a cancellation given by the assignors, the former could maintain a suit for infringement against the patentee. Having such doubt, and desiring to afford the assignors all rights and relief to which they were entitled under the contract and the law, he made an order staying proceedings in the pending case for 30 days, and allowing the defendant to file a cross bill. Thereupon such a cross bill was filed. In it all the material averments set out in the answer were repeated, and additional allegations made charging the defendant with default in not complying with the conditions of said contract, and that, because of such default, the complainants elected to and did terminate and cancel said contract; and further charging that the defendant, E. C. Atkins & Co., had lost all right, title, and interest to said letters patent under said assignment, because of their breach of its conditions.

To this cross bill the defendant corporation made very full and explicit answer to the charge of want of energy on the part of the defendant in manufacturing said machines, and placing the same upon the market. The defendant avers that the complainants were fully aware of the manner in which said business was being prosecuted, and that one of the complainants, Amos S. Parke, spent a considerable period of time at the defendant's works, and expressed himself as substantially satisfied with the manner in which the contract was being carried out; that they employed parties selected by complainants to manufacture the swages covered by the invention; and that, with said employment and skill, the complainants, through A. S. Parke, expressed themselves as satisfied. The defendant denies all charges of giving preference to other swage machines and being interested in the same, and avers that it acted in good faith in making and putting upon the market said machines.

The defendant further claims that all royalties and reports were made in substantial compliance with the contract, and that, if there were any informalities in such reports, or delay in making the same, objections thereto were waived by the acceptance of such royalties and reports by the complainants. The defendant further avers that such royalties and reports were accepted after notice of the cancellation of said contract by complainants. Defendant avers that said contract is still in full force, and was not canceled or rescinded by complainants' pretended notice of January 26, 1888.

Replication was duly filed. The parties stipulated to submit the case upon the pleadings under the cross bill, and upon the evidence, taken under the original bill and answer.

The case came to a final hearing before Judge Swan, whose opinion is set forth in the record. In the opinion of Judge Brown, from which we have quoted, in that part ordering a stay of proceedings and allowing the defendants to file a cross bill, he stated that the evidence showed that "the plaintiff [the assignee under the patent] has been guilty of a breach of the very agreement under which he claims title to the patent," and therefore expresses doubt as to his right to maintain the suit for an infringement against the patentee. Judge Swan says: "This conclusion, reached upon the same proofs which are here presented, it will be unseemly to disregard or overrule. It practically leaves nothing for decision."

We do not understand Judge Brown to have intended, by the remark quoted, to pass definitely upon the evidence relating to that issue presented by the pleadings. The evidence on that subject was so voluminous, and the conclusion to be reached from it so important, that it is not to be supposed that he would so summarily have disposed of it. No facts are stated and no reasons given to support the conclusion. He had previously stated in the most positive terms, that the title to a patent conveyed by a written assignment, such as that exhibited to the answer, could not be revested in the assignor by a breach of the contract on the part of the assignee, so as to enable the former to maintain a suit upon the patent. He had quoted approvingly the opinion of Mr. Justice Miller in Hartell v. Tilghman, in 99 U. S. 547, that the only way to rescind such a contract was by a mutual agreement, or by the decree of a court of justice; and that, until so rescinded or set aside, it is a subsisting agreement, which, whatever it is or may be shown to be, must govern the rights of the parties, and must be the foundation of any relief given by a court of equity.

Considering the opinion in all its parts, we are therefore justified in concluding that, by the remark quoted, the learned justice did not intend to decide that there had been such a breach of the contract by the assignee as authorized its cancellation by mere notice of rescission by the assignors. The evidence would not support such a conclusion. The sixth clause of the agreement, under which the assignors claim the power to rescind, provides that, if the assignee shall fail to make the statements and payments called for by a preceding clause of the contract within 10 days from the time the same shall become due, then the assignors shall have the right to cancel

the exclusive privilege and grant conferred, by giving notice of such intent. This is a clause providing for the forfeiture of title, and the condition upon which the forfeiture is to accrue must, of course, be strictly construed in favor of the assignee. The condition precedent to forfeiture could not be fulfilled unless there was a failure to make both the reports and the payment within the time required. The evidence conclusively shows that when the assignors attempted to cancel the contract, in January, no money was due from the assignee. Whatever the delinquency as to reports, therefore, the condition of forfeiture was not fulfilled.

The other wrongs complained of in the cross bill are not made conditions authorizing or working a forfeiture by the terms of the contract. They are all wrongs which the complainants, in the cross bill, have pleaded as matters of defense to the original bill, or which may be so pleaded if they ask to be permitted to do so. The original bill prays for an accounting, and in such accounting, before the master, all damages claimed for the wrongs alleged can be considered, and the proper relief allowed, if covered by the proof. They are not of a character to entitle complainants to affirmative relief by a cross bill. In the court below, it was held by Judge Swan that the cross bill could be sustained, in order to relieve complainants from the cloud upon their title to the letters patent. Inasmuch as we have already found that the evidence did not show that the conditions named in clause 6 had been broken as claimed, it follows that there is no cloud upon the title to be removed.

Various other errors are assigned by the appellant, not necessary to consider in view of the conclusion already stated.

For the reasons given, the decree of the circuit court must be reversed, the cross bill be dismissed, the injunction now in force be dissolved, and the case be remanded for further proceedings under the original bill.