<hr/>

## HANIFEN v. LUPTON et al.

(Circuit Court of Appeals, Third Circuit. February 26, 1900.)

### No. 25.

PATENTS—INFRINGEMENT—DEFENSES.

 A license given by the owner of a patent to import and sell in this country the fabric of the patent on payment of a royalty of two cents per yard thereon, contained a covenant by the licensee not to handle or serve as commission agent for any goods of such description made in this country by any person, firm, or corporation not licensed under the patent, "unless he pays the royalty thereon himself, it being understood, however, that but one royalty shall be paid on such goods or any fabric coming under this license, whether paid by manufacturer or seller." *Held*, that such provision was for the benefit of the licensee alone by permitting him to handle the fabric made in this country without payment of royalty, when, but only when, the manufacturer's royalty had been paid thereon, and that an unlicensed manufacturer, having no connection with the contract, could not avail himself of such provision as a defense against a suit for infringement on the ground that his product was sold by the licensee as his agent.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Joseph C. Fraley and W. P. Preble, for appellant.

A. B. Stoughton, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and KIRKᵀ ᴬT-RICK, District Judge.

ACHESON, Circuit Judge. This is an appeal by John E. Hanifen, trading as John E. Hanifen & Co., the complainant in the court below, from a decree dismissing his bill of complaint in a suit in equity brought on March 24, 1898, against Oliver Lupton, Edward A. Lupton, and Walter W. Watson, trading as Oliver Lupton & Co., charging the defendants with the infringement of letters patent No. 374,888, dated December 13, 1887, for an improvement in knitted fabrics, granted to Levi Bywater, assignor of the complainant. 95 Fed. 465. In their answer the defendants set up in defense the alleged invalidity

of the patent, and also denied infringement. After replication filed, the complainant proceeded to take his evidence in chief, and he made out a clear prima facie case. Upon the question of infringement, the record, under date of July 25, 1898, shows an admission and proof as follows, namely:

"Complainant's counsel produces a piece of cloth, which is marked 'Complainant's Exhibit Defendants' Fabric.' It is admitted on behalf of defendants that the said piece of cloth was manufactured by them and sold by them at Philadelphia, Pa., subsequent to the date of the patent in suit, and prior to the filing of the bill of complaint in this cause. The said exhibit is therefore offered in evidence on behalf of complainant."

The complainant then proved by a competent witness that this exhibit was the same as the knitted fabric of the patent in suit. The defendants offered no counter proof. They introduced no testimony whatever in support of their original answer. In due course, the case, in this state of the proofs, was set down for final hearing. The complainant was entitled to a decree against the defendants, as the record stood upon February 8, 1899, and on that day he made a motion therefor. The defendants immediately moved "for leave to amend the answer by setting up a certain license to Jean Bry, and the sales of defendants' goods thereunder." Such leave was granted, and subsequently, on February 18, 1899, the defendants filed such amendment, and put in evidence a license, of which the following is a copy:

"Memorandum of agreement made and concluded this twenty-sixth day of May, 1897, by and between John E. Hanifen & Co., of Philadelphia, party of the first part, and Jean Bry, of 20 Greene street, New York City, party of the second part.

"(1) Said John E. Hanifen & Co., in consideration of the faithful performance and discharge by the said party of the second part of the agreements hereinafter set forth by him to be performed, hereby license and empower said Jean Bry to deal in, import, use, and sell the knitted fabric described and claimed in the second claim of letters patent of the United States No. 374,888, issued Dec. 13th, 1887, to Levi Bywater, assignor to said John E. Hanifen & Co., at a royalty of two cents per yard.

"(2) Said party of the second part hereby accepts said license, and agrees, in consideration of the granting thereof, to make monthly returns in writing to W. P. Preble, Jr., attorney for said John E. Hanifen & Co., within the first ten days of each and every month, of all such knitted fabrics imported or sold by him during the previous month, and to pay the above-mentioned royalty thereon at the time of said returns, and also covenants and agrees not to handle, deal in, take orders for, or serve as commission agent for any goods of this description made in this country by any person, firm, or corporation who is not licensed under the above-mentioned patent, unless he pays the royalty thereon himself; it being understood, however, that but one royalty shall be paid on such goods, or any fabric coming under this license, whether paid by manufacturer or seller.

"(3) This license shall last, unless sooner terminated, until the expiration of the above-mentioned patent, and shall take effect from the fifteenth day of March, 1897, and apply to all goods ordered after such date, and shall only be terminated by mutual consent or for failure on the part of said parties of the second part to make proper returns and payments; but either party may terminate this license on one year's notice, not to be given, however, November 1, 1897.

"(4) Said party of the second part further covenants and agrees when called upon to satisfy said Preble, and furnish such data as may be necessary to verify the accuracy of said monthly reports.

"(5) It is further mutually agreed that the suit now pending against H. A. Caesar & Co. shall be disposed of without costs to either party, and by. such entry or order as the parties may hereafter agree would be for the best interests of the parties hereto.

"In witness whereof, the parties hereto have hereunto set their hands and seals this twenty-sixth day of May, 1897.          John E. Hanifen & Co."

In connection with the offer of this license, the defendants called and examined the licensee, Jean Bry, who resided and did business in the city of New York. Whatever sales the defendants effected through Bry were made in the city of New York. The defendants were and are manufacturers in the city of Philadelphia. It is shown that they began to manufacture this knitted fabric at Philadelphia in August, 1897. By letter of September 10, 1897, the complainant's attorney notified the defendants that they were infringing the Bywater patent; but offered them "a license at regular rates." To this letter no reply whatever was made. When sued afterwards, the defendants, as we have seen, by their answer, which was filed June 20, 1898, not only challenged the validity of the patent, but denied infringement generally. That they were acting under license was not suggested until February 8, 1899, when the case was ripe for a decree against them. Now, they had already put on the record the above-quoted admission in respect to the infringing exhibit, namely, "that the said piece of cloth was manufactured by them and sold by them at Philadelphia, Pa." The defendants have never offered any explanation of this admission, nor attempted to break its force. The learned judge who sat at the final hearing of this case, it would seem, overlooked this admission. It was by no means met by the testimony of Jean Bry. He did not even fix the date when he became sales agent for the defendants. Moreover, his statements were not only indefinite, but manifestly rested in part on mere hearsay. The defendants' books, to which he referred, were neither proved nor produced. None of the defendants took the stand. In the absence, then, of evidence which the defendants could have produced if the facts were, as alleged by them, that all their sales were made under license, no presumption in their favor can be indulged in. Their own admission on this record to the contrary of their allegation is decisive against them. We are of opinion that the learned judge below fell into error in dismissing the bill, even if the license to Bry affords protection to the defendants in respect to their dealings with and through him. We are not, however, able to read the complainant's license to Jean Bry as giving any sanction to the manufacture by the defendants of the patented fabric. The defendants are neither parties nor privies to that instrument. That they themselves are not bound by any of its provisions is too plain for argument. The licensee thereunder is Jean Bry, and as to him it is a nonassignable personal license. There is no contract relation whatsoever between the complainant and the defendants; hence no accounting on that basis is enforceable by the complainant against the defendants. If, then, the Bry license is, as claimed, a defense to a bill for infringement, the complainant is remediless as against the defendants in respect to their transactions with Bry. Upon the defendants' theory, by their own simple election to resort to Bry's license they acquired,

as against the owner of the patent, a right to manufacture without liability to account to him. But, if Bry's license is thus available to the defendants, it is equally available to every other unlicensed manufacturer in the country. A construction of a license which leads to such results is not to be lightly adopted. In this instance the license, we think, ought not to receive an interpretation which would leave the owner of the patent without any adequate protection. The license to Jean Bry is "to deal in, import, use, and sell the knitted fabric" of the patent "at a royalty of two cents per yard." It is to be noted that by the terms of the instrument the right to manufacture is not conferred upon Bry himself. Yet these unlicensed defendants deduce authority to them to manufacture the patented fabric from the provisions of a covenant on the part of Bry which really was restrictive of the personal license granted to him. This whole covenant of Bry reads:

"And also covenants and agrees not to handle, deal in, take orders for, or serve as commission agent for any goods of this description made in this country by any person, firm, or corporation who is not licensed under the above-mentioned patent, unless he pays the royalty thereon himself; it being understood, however, that but one royalty shall be paid on such goods, or any fabric coming under this license, whether paid by manufacturer or seller."

The royalty referred to by the words "unless he pays the royalty thereon himself" clearly is the manufacturer's royalty. Now, manifestly, these words were introduced in relief of Bry, and, it seems to us, for his relief only. These words import, however, we think, a condition precedent to any sale forbidden by Bry's restrictive covenant. Upon no reasonable interpretation of this provision of the license can Bry sell goods made by an unlicensed domestic manufacturer unless he himself has first paid the manufacturer's royalty thereon. The goods here referred to are not taken out of the monopoly of the patent until the manufacturer's royalty is paid. This construction gives effect to every part of the license agreement, and it is alike just to both the parties to the contract.

The soundness of the construction which we have thus given to the Bry license from a consideration of its terms finds confirmation if regard be had to the circumstances which surrounded the granting of it. Suits for infringement of this patent were pending against several importers in New York, including the firm of H. A. Caesar & Co., with which Jean Bry was connected. A settlement was effected under which these importers respectively took license in the form of the one here in question. The established rates of royalty to domestic manufacturers then were (as they have been since) three cents per yard on goods selling at one dollar and a half per yard or less and five cents per yard on goods selling over that price, and this was known to all these importers, or to their counsel, who acted for them in this matter. The express understanding of all the parties to the settlement was that these rates to domestic manufacturers were to be maintained; but these particular importers, as one of the terms of the settlement, were to have a slightly reduced royalty on their imported goods only.

101 F.—30

We are not able to discover from the evidence that the complainant has done anything to estop him from maintaining this bill. Nothing inequitable can result from decreeing an account against the defendants. If the complainant has received from Jean Bry any payments justly applicable to royalties with which the defendants were chargeable, a proper credit therefor may be allowed to them in stating the account. The decree of the circuit court dismissing the complainant's bill is reversed, and the case is remanded to that court with direction to enter a decree in favor of the complainant in accordance with the prayer of the bill.