## HARTELL *v.* TILGHMAN.

1. A suit between citizens of the same State cannot be sustained in the Circuit Court as arising under the patent laws of the United States, where the defendant admits the validity and his use of the plaintiff's letters-patent, and a subsisting contract is shown governing the rights of the parties in the use of the invention.

2. Relief in such a suit is founded on the contract, and not on those laws.

APPEAL from the Circuit Court of the United States for the Eastern District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. William Henry Rawle* and *Mr. M. D. Connolly* for the appellants.

The court below had no jurisdiction. The parties were all citizens of the same State. The suit was founded upon a contract between them, and did not arise under a statute of the United States. *Wilson* v. *Sandford,* 10 How. 99; *Hartshorn* v. *Day,* 19 id. 211; *Slemmer's Appeal,* 58 Pa. St. 164; *Blanchard* v. *Sprague,* 1 Cliff. 288; *Goodyear* v. *Day,* 1 Blatchf. 565; *Merserole* v. *Union Paper Collar Co.,* 6 id. 356; *Goodyear* v. *Union India-rubber Co.,* 4 id. 63; *Burr* v. *Gregory,* 2 Paine, 426; *Hill* v. *Whitcomb,* 1 Holmes, 317; *Pulte* v. *Derby,* 5 McLean, 328; Curtis, Patents, sect. 496.

When the defendant's original use of a machine or a process for which letters-patent have been granted to another is unlawful, he is *prima facie* an infringer, and the Federal jurisdiction attaches to prevent a violation of a right secured by the laws of the United States. But where such use is lawful, he is *prima facie* not an infringer, and that jurisdiction does not attach. The rights involved rest solely upon contract, and it is only when a breach of it is shown that the continued exercise of them can be enjoined.

*Mr. George Harding, contra.*

The bill is founded on letters-patent. The relief sought is an injunction, a discovery, and an account, and not the rescission, the enforcement, or the construction of a contract of license: The court below therefore had jurisdiction. *Brooks* v. *Stolley,* 3 McLean, 523; *Woodworth* v. *Weed,* 1 Blatchf. 165; *Wilson*

v. *Sherman*, id. 538 ; *Woodworth* v. *Cook*, 2 id. 160 ; *Wilson* v. *Sanford*, 10 How. 99 ; *Pulte* v. *Derby*, 5 McLean, 336 ; *Day* v. *Hartshorn*, 3 Fish. 32 ; *Goodyear* v. *Congress Rubber Company*, 3 Blatchf. 453 ; *Judson* v. *Union Rubber Company*, 4 id. 66 ; *Bloomer* v. *Gilpin*, 4 Fish. 54 ; *Blanchard* v. *Sprague*, 1 Cliff. 288 ; *Merserole* v. *Union Paper Collar Co.*, 3 Fish. 483 ; *Littlefield* v. *Perry*, 21 Wall. 205 ; *Magic Ruffle Company* v. *Elm City Company*, 13 Blatchf. 157.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the Eastern District of Pennsylvania, in which Tilghman, the appellee, describes himself in his bill as a citizen of that State, and the defendants as citizens of the same State. It thus appears affirmatively that, if the court had jurisdiction of the case, it was for some other reason than the citizenship of the parties ; and it is argued by appellants that there is no such other ground for the jurisdiction.

The counsel for appellee, however, insists that it is "a case arising under the patent laws of the United States," and therefore cognizable in the circuit courts of the United States, on account of the subject-matter of the suit.

Subdivision 9 of section 629 of the Revised Statutes, which section is devoted to a definition of the powers of that court, gives it original jurisdiction " of all suits at law or in equity arising under the patent or copyright laws of the United States."

This section of the revision is founded on section 55 of the act of July 8, 1870, which declares that all actions, suits, controversies, and cases arising under the patent laws of the United States " shall be originally cognizable, as well at law as in equity, in the circuit courts of the United States ; " and that those courts shall have power to grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable ; and on a decree for infringement complainant shall be entitled, in addition to profits, to the damages he has sustained thereby. The language of the act of 1836 is substantially the same, except as

to the damages to be recovered. We are, therefore, to lecide whether this suit is one arising under the patent laws of the United States, within the meaning of the clause we have cited.

If a man owning a tract of land, his title to which is a patent from the United States, should sell or lease that land, and a controversy should arise between him and his vendee or lessee as to their rights in the premises, it could not be said that any suit brought by the vendor to assert his rights was a suit arising under the land laws of the United States; and this would be beyond question if the defendant, admitting the title of plaintiff to the land, should make no other defence than such as was founded in rights derived from plaintiff by contract. That is the case before us, with the variance that plaintiff's title is to a patent for an invention instead of a patent for land.

His bill begins by a statement that he is the original inventor and patentee of a process for cutting and engraving stone, glass, metal, and other hard substances. It is the one known as the sand-blast process.

He then sets out what we understand to be a contract with defendants for the use by the latter of his invention. He declares that defendants paid him a considerable sum for the machines necessary in the use of the invention, and also paid him the royalty which he asked, for several months, for the use of the process, which he claims to be the thing secured to him by patent. He alleges that after this defendants refused to do certain other things which he charges to have been a part of the contract, and thereupon he forbade them further to use his patent process, and now charges them as infringers.

The defendants admit the validity of plaintiff's patent. They admit the use of it and their liability to him for its use under the contract. They set out in a plea the contract as they understand it, and the tender of all that is due to plaintiff under it, and their readiness to perform it.

What is there here arising under the patent laws of the United States? What controversy that requires for its decision a reference to those laws or a construction of them?

There is no denial of the force or validity of plaintiff's patent, nor of his right to the monopoly which it gives him, except as he has parted with that right by contract.

The complainant's view of the case is that there was a verbal agreement that he should prepare and put up in defendants' workshop ready for use such parts of the machinery as were of special use in his invention, for which defendants were to pay him at all events. That after this was done defendants should take a license for the use of his invention; that this license was to be the same in its terms as that given to all other persons who used the process, and among these were the right on the part of the patentee to visit the works of the defendants at all times, as well as to inspect their books, with a view to ascertain the amount of work done on which royalty was due. Also, that once every year the complainant had a right to fix the tariff of rates to be paid by defendants, by increasing it if he so determined, with no other limitation than that the increase of rates should apply equally to all licensees of the patent.

It is established by evidence of which there is no contradiction that complainant did furnish and put in place the machines, for which defendants paid him $649. That complainant also furnished a schedule of the rates of royalty to be paid on the different kinds of work to which the patented process was to apply, and that defendants made monthly returns and monthly payments according to this schedule, which were received by plaintiff without objection. That besides the machinery purchased of plaintiff, the defendants had expended about $3,000 in erecting a blower for the use of the sand-blast of complainant's process.

At this stage of the affair complainant tendered to defendants two blank forms of license to be signed by both parties, containing the two conditions we have mentioned. After some fruitless negotiations, defendants refused to sign these papers, and complainant thereupon, as we have said, forbade them to use the process, and on their disregard of this admonition brought his bill in chancery for an injunction, and for an account of profits and additional damages.

The argument of counsel is that defendants, having refused

to sign the papers tendered them, are without license or other authority to use his invention, and are naked infringers of his rights under the acts of Congress.

The defendants say that they never agreed to accept a license with the conditions we have mentioned in them; that they never agreed to permit complainant's agents to inspect all the processes of their own works, some of which were valuable secrets, nor, after they had expended thousands of dollars in preparations for the use of his process, to place themselves under his arbitrary control as to the prices they should pay for the use of his invention. And they say that when the machines were in full operation and paid for, and the schedule of rates had been furnished by complainant and accepted by them, the contract was complete, and needed no such written agreement as the one tendered them for signature.

Such were the pleadings and the principal conceded facts on which the court was called to act, and we pause here to consider the question of jurisdiction on the case thus stated.

*Burr* v. *Gregory* (2 Paine, 426), one of the earliest cases on this subject, was a bill to procure a decree that the assignment of a patent by Burnap to Gregory was to the extent of three-fifteenths for the benefit of complainant, Burr, and to have a conveyance executed accordingly. Mr. Justice Thompson said that if the validity of the patent or of the assignment could be drawn in question, the Circuit Court might have jurisdiction. But as it was a matter which grew out of the contract, and there was no averment of citizenship, the amount prayed for, growing out of the profits, did not vary the case so as to give jurisdiction. This decision was made before the act of 1836, but is indicative of the sound doctrine that controversies arising out of contracts concerning patent-rights did not necessarily belong to the Federal courts.

The next case in chronological order was founded on the act of 1836, the language of which, as we have seen, was on this point preserved in the act of 1870, and is embodied in the Revised Statutes. It is the only authoritative construction of the statute on that point made by this court, except *Little-field* v. *Perry* (21 Wall. 205), which is in accord with it, and we think it covers the case under consideration. We refer to

*Wilson* v. *Sanford* (10 How. 99), and the opinion was delivered by Mr. Chief Justice Taney.

The complainant was assignee of the Woodward planing-machine patent, and had licensed the defendants to use one machine upon payment of $1,400, of which $250 was paid down, and notes payable in nine, twelve, eighteen, and twenty-four months given for the remainder. This license contained a provision that if either of the notes was not punctually paid at maturity, all the rights under the license ceased and reverted to " Wilson, who became reinvested in the same manner as if the license had never been made." Upon failure to pay the first two notes, Wilson brought his bill, charging that notwithstanding this, the defendants were using the machine, and thus infringing his patent. He prayed an injunction, an account, &c.

The bill was dismissed in the court below, and on appeal to this court the appeal was dismissed because the amount in controversy did not exceed $2,000. If, however, it had been a case arising under the patent laws of the United States, no sum was necessary to give jurisdiction.

The precise question, therefore, to be decided was whether the suit arose under the patent laws of the United States; and the Chief Justice, after reciting the clause in the act of 1836 which gives the circuit courts jurisdiction in all such cases, proceeds to discuss that question in this manner: " The peculiar privilege," he says, "given to this class of cases was intended to secure uniformity of decision in the construction of the act of Congress in relation to patents. Now, the dispute in this case does not arise under any act of Congress, nor does the decision depend upon the construction of any law in relation to patents. It arises out of the contract stated in the bill, and there is no act of Congress providing for or regulating contracts of this kind. The rights of the parties depend altogether upon common-law and equity principles. The object of the bill is to have this contract set aside and declared to be forfeited; and the prayer is, ' that the appellant's reinvestiture of title to the license granted to the appellees, by reason of the forfeiture of the contract, may be sanctioned by the court,' and for an injunction. But the injunction he asks for is to

be the consequence of the decree of the court sanctioning the forfeiture. He alleges no ground for an injunction, unless the contract is set aside. And if the case made in the bill was a fit one for relief in equity, it is very clear that whether the contract ought to be declared forfeited or not in a court of chancery depended altogether upon the rules and principles of equity, and in no degree whatever upon any act of Congress concerning patent-rights. And whenever a contract is made in relation to them, which is not provided for and regulated by Congress, the parties, if any dispute arises, stand upon the same ground with other litigants as to the right of appeal."

Let us see how closely these remarks and the case to which they related apply to the present case. In that case a contract was made under which the defendant entered on the use of the invention. This is also true of the case before us. In that case it is charged that an act to be performed by the defendant and licensee under the contract was not performed, to wit, payment of the notes. In the case before us it is alleged in like manner that the defendants failed to perform part of the contract, to wit, to sign a license.

In that case the complainant asserted, as in this, that all right under the contract had ceased, and he was remitted to his original rights under the patent, and could, therefore, sue in the Federal court under the statute; but the court held this to be erroneous, and that the rights of the parties depended on the contract and not on the statute. Why does not the same rule apply to the present case? Wilson's case was stronger than Tilghman's case, for two reasons:—

1. Because the contract was all in writing, and there was no dispute about its meaning. Here it was in parol, and there is not only dispute about its meaning, but the rights of the parties depend almost wholly upon the points in dispute, which have no relation to the patent laws of the United States.

2. In Wilson's case there was an express provision in writing that a failure to pay any note when due forfeited the license and reinvested Wilson with all his original rights. No such provision is set up in the contract between Tilghman and the defendants.

In this case, as in that, the defendants had bought the machine

and paid for it and used it. In this case, as in that, the right to its further use depended upon the contract, and was to be determined by its construction and effect. In this, as in that, the case, in Judge Taney's language, " does not arise under an act of Congress, nor does the decision depend upon the construction of any law in relation to patents. The rights of the parties depend altogether upon common-law and equity principles.

In *Goodyear* v. *Union India-rubber Company* (4 Blatchf. 63), where the licensees had neglected for three years to pay the royalty which they had agreed to pay, and refused to permit their books to be inspected, and where one of the prayers of the bill was that until they had so accounted and paid the royalty due they should be enjoined from the use of the invention, Judge Ingersoll held that the bill stated no case arising under the patent laws of the United States, but did not make a case for relief on the contract. Judge Blatchford stated the doctrine still more strongly in *Merserole et al.* v. *Union Paper Collar Co.,* 6 id. 356.

In the case of *Blanchard* v. *Sprague* (1 Cliff. 288), decided by Mr. Justice Clifford in 1859, he said : " No dispute arises in the case under any act of Congress, nor does the decision depend in any respect on any law of Congress in relation to patents. On the contrary, it arises entirely out of the agreement, express or implied, for a license, and the rights of the parties depend altogether upon the ordinary rules of law. . . . What the complainant really claims is that he terminated or revoked the license under the agreement which previously existed between the parties, by giving the notice, and that the respondent subsequently continued the use of the machine without any stipulation as to the rate of tariff." How precisely descriptive of the case under consideration, in which Tilghman, claiming that he has terminated at his own option the arrangement under which the defendants had been operating, can now sue in the Federal court for an infringement in violation of the acts of Congress. In the case mentioned Judge Clifford held otherwise.

To the same purport is *Hill* v. *Whitcomb*, decided by Judge Shepley, and reported in 1 Holmes, 317.

It may be conceded that the case of *Brooks* v. *Stolly* (3 Mc-Lean, 523), decided by Mr. Justice McLean on the circuit prior to the act of 1836, is, in some respects, opposed to the authorities we have cited. But in them it stands alone, and is not supported by the better reason.

We may be asked, if we concede the complainant's statement of the verbal agreement to be correct, what remedy has he on it? The answer is very easy. He can establish his royalty once every year, and sue at law and recover every month or every year for what is due. If he desires to assert his right of examining the works of the defendants, he can, in a proper case made, compel them to submit to this examination. If he desires to enforce the agreement for executing a written contract of license, he can bring a suit in equity for specific performance, and with or without that specific relief ask the court to enjoin them from using the patented process until they execute the agreement and comply with its requirements. All these and perhaps other remedies are open to him to enforce the contract. He may also file a bill in chancery to have it annulled or set aside because of the difficulties placed in the way of its fair execution by the defendants.

Not content, however, with all these remedies, the complainant assumes that he has, under the condition of things he has proved, the right in himself to abandon the contract, to treat it as a nullity, and to charge the defendants as infringers, liable as trespassers under the act of Congress to pay both profits and damages.

The analogy of an action of ejectment to recover possession of land in cases of a broken contract of sale is referred to. The analogy, however, is imperfect and deceptive. That action is one at law, depending on the existence of the strict legal title to land in plaintiff, and the doctrine that the right of possession follows the title. It is a peculiar action, founded on a peculiar doctrine limited to real estate, and liable to be defeated in equity by a bill for specific performance and an injunction.

In the case of a patent, plaintiff does not recover any specific property, real or personal. He recovers damages or compensation for the use of his monopoly; and if he has made a bargain

with the defendant, his right to rescind or annul it must depend on all the equitable circumstances of the case.

Here, where he has sold and received a considerable sum for a machine of no use for any other purpose; where the defendants have spent several thousand dollars on other machinery, which is also valueless except in connection with the use of this process; where defendants have paid and plaintiff received for many months the royalty which plaintiff established, and are still ready and willing to continue payment; and where the contract being in parol the parties differ about one or two of its minor terms, — we do not agree that either party can of his own volition declare the contract rescinded, and proceed precisely as if nothing had been done under it. If it is to be rescinded, it can be done only by a mutual agreement, or by the decree of a court of justice. If either party disregards it, it can be specifically enforced against him, or damages can be recovered for its violation. But until so rescinded or set aside, it is a subsisting agreement, which, whatever it is, or may be shown to be, must govern the rights of these parties in the use of complainant's process, and must be the foundation of any relief given by a court of equity.

Such a case is not cognizable in a court of the United States by reason of its subject-matter, and as the parties could not sustain such a suit in the Circuit Court by reason of citizenship, this bill should have been dismissed.

The decree of that court will, therefore, be reversed, with directions to dismiss the bill without prejudice; and it is

*So ordered.*

MR. JUSTICE STRONG did not hear the argument nor take any part in the decision of the case.

MR. JUSTICE BRADLEY, with whom concurred MR. CHIEF JUSTICE WAITE and MR. JUSTICE SWAYNE, dissenting.

I dissent from the opinion of the court in this case. I cannot see the slightest room for doubt as to the jurisdiction of the Circuit Court. The suit is a bill in equity, which sets up letters-patent issued to the complainant for a new and useful improvement in cutting and engraving stone, metal, and glass;

and complains that the defendants are infringing said patent by using the said process without any license therefor, and praying an injunction, and decree for profits and damages. The bill also states the fact that negotiations had passed between the complainant and the defendants for a license to use the said invention, but that the defendants had failed to comply with the conditions, and hence had no right to continue the use ; but persisted in doing so. This is the substance of the bill. It is a clear case, it seems to me, " arising under the patent laws of the United States," and is therefore properly cognizable by the Circuit Court of the United States under sect. 629, art. 9, and sects. 4919 and 4921 of the Revised Statutes, and the laws from which that article and those sections were compiled. The cause of action, or ground of relief, is the infringement of the patent. The plaintiff chooses to place himself on that ground alone. By doing so he runs the risk of any defence which would show a right to use the invention, whether license from himself, invalidity of the patent, non-infringement, or any other proper defence to a suit on a patent. He states in his bill, as he had a right to do by the rules of equity pleading, what the supposed defence would be, and answers it. This anticipation of the defence does not change the nature of the suit in the least. Perhaps he need not have anticipated the defence, but might have left the defendants to develop it in their answer. Certainly in that case the character of the defence would not have ousted the court of its jurisdiction. If a cause of action is cognizable by the United States court, the defendant cannot oust that jurisdiction by his defence to the action. He may defeat the action, but he cannot destroy the jurisdiction.

It will not do to say that the remedy of the complainant was a bill for a specific performance of the parol agreement that the defendants would take a license. Perhaps he had such a remedy. But he did not choose to pursue it. He waived it by suing as for an infringement. He chose to take the responsibility of having a right to put an end to the agreement without juridical aid. Having done this, his only remedy was to sue on the patent as for an infringement. He certainly had a right to do this. He was not bound to sue for specific perform-

ance.   Nor was he bound to sue for the avoidance of the sup-
posed agreement.   It may be that it would have been his
better remedy.   It may be that the result of the negotiation
is to create a defence to the suit for infringement, amounting
to a parol leave and license, or a license in law.   If so, he has
only made a mistake in suing as for an infringement of his
patent, and may fail in his action.   How that may be it is un-
necessary now to inquire, since the majority of this court has
decided the case on the question of jurisdiction.   But whether
it be so or not, the character of the present suit is not changed,
as a suit for injunction and damages for the alleged infringe-
ment.

How, I would ask, could a State court have determined this
suit?   Suppose the defence of license, express or implied, had
failed, what would the State court have done?   Could it have
taken an account of profits?   Could it have assessed damages
for the infringement?   Could it have granted an injunction to
restrain the defendants in the use of the invention?   This
would have been a new branch of jurisdiction and inquiry for
it to have assumed.   It is too obvious for argument, as it seems
to me, that no State court has, or could rightfully take, juris-
diction of the suit.

It is perfectly well settled, I admit, that where a suit is
brought on a contract of which a patent is the subject-matter,
either to enforce such contract, or to annul it, the case arises
on the contract, or out of the contract, and not under the patent
laws.   But where infringement of the patent is the ground of
action, and redress is sought therefor, the case does arise under
the patent laws, and is cognizable in the Federal court, — no
matter what collateral issues may be raised by the defendant.
He may set up that the patent is void, that he does not infringe,
that he has a license, or a release, or what not; the Federal
court is fully competent to try any of the issues thus made.

The case principally relied on by the majority of the court
is that of *Wilson* v. *Sanford*, 10 How. 99.   But there the bill
prayed to have the license declared void.   The Chief Justice
said : " The object of the bill is to have this contract set aside,
and declared to be forfeited, and the prayer is that the appel-
lant's reinvestiture of title to the license granted to the appellees,

by reason of the forfeiture of the contract, may be sanctioned by this court, and for an injunction." In such a case it may be that relief is properly to be sought in the State court. But if the question were a new one, I should think that where the complainant seeks damages for infringement and an injunction against the use of the invention, making that the basis of his suit, it would not be improper, nor oust the jurisdiction of the Federal court, to join in such a bill, as ancillary to the principal relief sought, an application to avoid an inequitable license held by the defendant. I see nothing incongruous in the joinder of such matters in the bill. It seems to me that the views on this subject, expressed in *Brooks* v. *Stolley* (3 McLean, 523), are perfectly sound and just. There the complainant had given a license to use a patented invention, determinable on non-payment of the royalty. On failure to pay he filed his bill for an injunction and damages, at the same time stating the granting of the license, and the failure to perform the conditions of it. Mr. Justice McLean said: " It is suggested that, as the whole controversy in the case arises under the contract of license, the parties to which being citizens of this State, the Federal court cannot take jurisdiction. This objection would be unanswerable, if no right were involved in the controversy except what arises out of the contract, as, for instance, the Circuit Court could take no jurisdiction under the contract of an action, merely to recover the sums agreed to be paid by the defendant; but in the present aspect of the case, it is not limited to the contract. The complainants set up their right under the patent, and allege that the defendant is infringing that right; that the license affords no justification whatever to the defendant. The right then of the complainants to an injunction is not founded by them on the contract, but on the assignment of the patent. If the object of the bill were merely to enforce the specific execution of the contract, the Circuit Court of the United States could exercise no jurisdiction in the case." See also Curtis, Patents, sect. 496, to the same purpose, citing this opinion.

It seems to me, with all due submission, that if we are to have regard to " the better reason," we shall find it expressed in these remarks of Mr. Justice McLean.

It may be laid down, I think, as a general principle, that where a case necessarily involves a question arising under the Constitution or laws of the United States, and cannot be decided without deciding that question, it is a case arising under said Constitution and laws, and may be brought, as the law now stands, in the Circuit Court of the United States, although other questions may likewise be involved which might be tried and decided in the State courts. I do not believe in the doctrine that the presence of a question of municipal law in a case which necessarily involves Federal questions can deprive the Federal courts of their jurisdiction. It is too narrow a construction of the judicial powers and functions of the Federal government and its courts.

But in this case the complainant asks no relief in relation to the supposed agreement between him and the defendants. He places himself solely on his rights accruing under the patent and on the defendants' infringement of them. I think, therefore, the jurisdiction of the Circuit Court of the United States was undoubted.