FETTER and another *v.* NEWHALL.

*(Circuit Court, S. D. New York. August 29, 1883.)*

1. PATENTS FOR INVENTIONS—ASSIGNMENT BY MARRIED WOMAN OR INFANT—STATES LAWS.

    A married woman, an infant, or a person under guardianship, may be an inventor or the assignee of an inventor, and when such, the right to the patent

would vest in them, and when so vested as patentee or assignee, all that the act of congress requires is that if they assign the patent such assignment shall be in writing, so as to be recorded; but the ability to make the instrument must be found in the laws of the states, where all such rights are regulated.

2. SAME—LAW OF NEW YORK.
   In New York a married woman may take by assignment, and by writing assign a patent, and may sue in her own name for an infringement of her rights.

3. SAME—CLAIMS IN REISSUE.
   The invalidity of a claim in a reissue does not impair the validity of a claim in the original patent, which is repeated and separately stated in the reissue

4. SAME—INFRINGEMENT—PART OF INVENTION.
   It is not necessary to take the whole invention to constitute an infringement.

5. SAME—LICENSE.
   Where an infringer is not acting under a license, but in defiance of the patent and outside of the license, it will not protect him.

6. SAME—PATENT No. 110,839—REISSUE 8,121.
   Reissued letters patent No. 8,121, dated March 12, 1878, granted to David Fetter, assignor, for an improvement in drive screws, the original of which was No. 110,839, dated January 10, 1871, *held* valid as to the first claim, and infringed by defendant.

In Equity.

*Amos Broadnax*, for orators.

*William Bakewell*, for defendant.

WHEELER, J.    This suit is brought upon reissued letters patent No. 8,121, dated March 12, 1878, and granted to David F. Fetter, assignor, for an improvement in drive screws, the original of which was No. 110,839, dated January 10, 1871.    The assignee of the inventor assigned the patent to the oratrix, Mary B. Fetter, wife of the inventor, a resident of the state of New York, and she by her sole deed assigned an interest in it to one Lewis, who assigned the same to the orator the Fetter Drive Screw Company.    The original patent was for a drive screw for driving into wood like a spike, but to be removed only by turning out; the threads being square on the side towards the head, and tapering from that side towards the point, which, was as large as the circle of the outer edges of the threads where it commenced, and tapered in conoidal form to the end, so that the smooth point would divide the fibers of the wood and make room for the threads.    There was one claim which was for "a drive screw having an angular thread of the character shown, and a conoidal point, the base of which is of the same diameter as the lower end of the shank with which it immediately connects."    From the specification it is understood that what is meant as the shank in the claim includes the threads, so that the diameter of it extends to the outer edges of the threads.    In the specification of the reissue it was said that the point might be made conoidal, its base being of the same diameter as the lower end of the shank, and another claim was added which was for "(2) a drive screw having an angular thread of the character shown, and a point which extends by a gradual taper from its base to its extremity."

The defendant operated under a license from the inventor, approved by the owners of the patent, until April, 1880, and procured to be made and sold screws according to the specifications of the

original patent, the points being oval in taper, and paid a commission on the sales. Since then he has repudiated the license and continued the use of the same style of screws, except that the points have a straight conical, instead of an oval conoidal, taper.

The defenses are that the assignment to Mary B. Fetter, a married woman, vested the right to the patent in the husband; that if not, her assignment to another was void; that the original patent was void for want of novelty; and that, if not, the reissue is for a different invention, and therefore void; that the style which he now uses is not an infringement; and that he is protected from a suit for infringement by the license.

It may be that at common law a patent-right granted or assigned to a married woman would be such personal property that her husband could, by virtue of his marital right, reduce it to possession and make it his own. Hindmarch, Patents, 35. It is argued that, this being so, the titles to patents are out of the reach of the laws of the states, and that as congress has passed no law changing the rights of married women, the common law must prevail, and that the husband should have been a party to the bill, either alone in his own right or with her, if he would leave the patent in her right; and that there is a misjoinder as to the orator the corporation because it has no right.

The laws of congress, however, of which patents are creatures, give the right to a patent to the inventor, whether *sui juris* or under disability, and to the assigns of the inventor. Rev. St. §§ 4886, 4895. They are assignable by instrument in writing. Section 4898. This is the whole requirement. A married woman, an infant, or a person under guardianship, might be an inventor, or the assignee of an inventor, of a patented invention. It would seem that, when such, the right to the patent would vest in them; and that, when vested in them as patentees or assignees, all that congress has required is that, if they would assign, the assignment must be in writing, so as to be recorded; but that the ability to make the instrument, or the aids to the disability, must be found in the laws of the states where all such rights are regulated. If an infant or other person under guardianship should have a patent to be assigned, the instrument in writing would have to be made to comply with the law of congress, and have to be made by guardian; but there are no federal guardians for such persons, and resort for the guardian would have to be made to the laws of the state. The laws of New York free married women from disability to make such instruments, and make their property distinctly their own. The oratrix could undoubtedly take by assignment, as married women by the common law always could. She could make the instrument in writing by the laws of the state, and when she had made it, it fulfilled the requirements of the laws of the United States. Thus the drive screw company took by her assignment what she attempted to assign to them; and she could sue in

her own name in this form, for infringement of her rights. This was expressly adjudged in this court by BLATCHFORD, J., in *Lorillard* v. *Standard Oil Co.* 17 O. G. 1506; 18 Blatchf. 199; [S. C. 2 FED. REP. 902.] Of course, she could join with another for an injury to their joint rights.

As to the want of novelty, the evidence does not satisfactorily show that such screws with either conical or conoidal points, equal in diameter at the base to the shank, including the threads, had been known or used by others at the time of this invention.

It may be that the second claim of the reissued patent enlarges its scope beyond that of the original patent. If it does, it is doubtless void to the extent of that claim. *James* v. *Campbell*, 104 U. S. 356. The invalidity of that claim would not impair that of the claim in the original patent separately reproduced in the reissue. *Gage* v. *Herring*, 2 Sup. Ct. Rep. 819, cited and applied by BLATCHFORD, J., in *Schillinger* v. *Greenway Brewing Co.* 24 O. G. 495; [S. C. 17 FED. REP. 244.] The reissued patent, as to that claim, is not for any invention different from that shown in the specification and drawings of the original patent. The first claim appears, therefore, to be valid.

Upon the question cf infringement it is to be noticed that this invention, as patented, is not, as has been argued, of an improvement consisting merely of the conoidal point. The essential feature of it is the enlargement of the base of the point to the size of the circle of the outer edge of the threads, and in this the novelty consists. The point is described as conoidal, but the degree of the oval taper is not specified; it might be more or less, and so little as to be hardly distinguishable from a straight taper. The straight taper would, with the enlarged base, be the equivalent of the oval taper for separating the fibers of the wood to admit the threads, and this change merely colorable. If, as has been claimed, the original patent covered no screws but those having oval points, still, as it covered the enlarged base of the point also, it might be infringed by the use of that feature without the oval point, for the patent gives exclusive enjoyment of the whole patented invention, and taking one feature is an infringement *pro tanto*. It cannot be necessary to take the whole invention to constitute an infringement. *Sharp* v. *Tifft*, 18 Blatchf. 132; [S. C. 2 FED. REP. 697.] As this case is now considered, the defendant infringes the first claim by taking the point with the enlarged base. In doing this he is not acting under the license, whatever its terms are, which are in dispute, but is acting in defiance of the patent and outside the license. Under these circumstances the license is no protection against suit for infringement. *Hartell* v. *Tilghman*, 99 U. S. 547.

Let there be a decree for the orators for an injunction and account, with costs.