McMULLEN et al. v. BOWERS et al.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1900.)

No. 576.

JURISDICTION OF FEDERAL COURTS—CASES ARISING UNDER PATENT LAWS.

Complainant granted a license to a corporation to construct and use within a specified territory dredging apparatus made in accordance with patents owned by him, the contract providing for the forfeiture to complainant of any of such apparatus used outside the territory named. The corporation became insolvent, and a dredging machine built under such license was sold by a receiver, and was subsequently purchased by defendant, who removed and used it outside the prescribed territory. *Held*, that a suit by complainant for the forfeiture of the dredge and for infringement of his patents, alleged to have resulted from its use outside the territory covered by the license, in which the validity of such patents was not denied, was not one arising under the patent laws of the United States, but one on contract, in which the rights of the parties were governed by the general principles of law and equity, and not by the patent laws, the question of infringement being dependent entirely on the construction of the contract; and that, the parties being citizens of the same state, the federal courts were without jurisdiction.

Appeal from the Circuit Court of the United States for the Northern District of California.

R. Percy Wright, for appellants.

John H. Miller, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is an appeal from an order granting a preliminary injunction. The essential facts are: That on December 16, 1889, A. B. Bowers granted to the Bowers Dredging Company, an Illinois corporation, the following written license or assignment to operate under his patents:

"Know all men by these presents, that I, Alphonzo B. Bowers, of Washington, D. C., for and in consideration of the sum of one dollar, and for other

good and sufficient considerations, the receipt of which is hereby acknowledged, do hereby give, grant, and convey to the Bowers Dredging Company, its successors and assigns, the full and exclusive right to use, and to manufacture from drawings and supervision furnished or approved by me, all the Bowers hydraulic dredging apparatus and appliances for which letters patent of the United States have been or may hereafter be granted to me, to the full end of the term for which such letters patent have been or may be granted, for use in the state of Washington, exclusive of Gray's Harbor, and in that portion of Oregon lying north of and including the Columbia river and its tributaries, but nowhere else. But this conveyance is hereby made upon this express condition: That the use of said apparatus, or the sale of said apparatus for use outside of said territory without my written consent therefor, shall subject the machines so used to forfeiture to me wherever they may be found, and subject also to the payment by grantee, its successors or assigns, of the sum of forty dollars ($40) for each of such patents as may hereafter be issued to me by the United States."

Acting under this agreement, the Bowers Dredging Company built two dredging machines, the Anaconda and the Phyton, from drawings and under supervision furnished by Bowers, and operated them in the territory mentioned in said agreement up to the year 1897. In that year the Bowers Dredging Company, having become insolvent, was placed in the hands of a receiver, and said receiver, on the 12th day of September, 1898, sold the dredgers Anaconda and Python, together with the rights of the Bowers Dredging Company, to one Smith, at Seattle, who subsequently sold all of said property to the Puget Sound Dredging Company, a corporation created under the laws of Washington. That on the 17th day of March, 1899, the Puget Sound Dredging Company sold the dredger Python to the appellant W. N. Concanon at Seattle; and Mr. Concanon thereupon removed the said dredger from the licensed territory, and carried it to Coos Bay, and there operated the same for a short time, after which he procured from the United States government a contract to do dredging in the harbor of Eureka, state of California, and thereupon he removed the dredger to Eureka, and was performing work therewith at Eureka when this suit was brought. It is alleged in the bill of complaint, among other things, that in all of his acts respecting said dredger Concanon was the employé and agent of the San Francisco Bridge Company; that the other defendants herein were officers, directors, and stockholders of said company, and that they were all interested in acquiring said dredger Python, and bringing it into this territory and operating it. It is further alleged that the bringing of said dredging machine Python into, and the use of it in, the state of California, is contrary to and in violation of the terms of the agreement of December 16, 1889, and is an interference with the rights held and owned by complainants under letters patent for the states of California and Oregon south of the Columbia, and is an infringement upon the claims of said patents and rights thereunder; that by reason of said acts of the defendants, complainants have suffered great and irreparable loss and injury. The prayer of the bill, among other things, is that the defendants, and each of them, "be enjoined and restrained, both provisionally on the filing of this bill of complaint and perpetually on the final hearing, from further using, selling, transferring or disposing of the said dredging machine Python, or any of its parts, appli-

ances, or appurtenances, and from making, using, or selling any dredging machine containing or embracing the invention described, claimed, and patented in and by said letters patent, and from infringing upon said letters patent in any manner whatever; * * * that it be ordered, adjudged, and decreed that the said dredging machine Python, by reason of its having been brought out of and used beyond the limit of the territory covered by the license of December 16, A. D. 1889, without the written consent of * * * Alphonzo B. Bowers, has become forfeited" to him, and that the same be delivered over to Alphonzo B. Bowers by virtue of said forfeiture, to be and become his sole property; and for an accounting. The validity of complainants' patents, as alleged in the bill, is not denied by the defendants. The complainants and defendants are all citizens of the state of California.

The contentions of the respective parties upon the merits of the case are, upon the part of appellants, that the dredger Python passed outside of the monopoly created by the Bowers patents on September 12, 1898, and all restrictions upon its use ceased at that time; that the facts disclosed by the moving papers for a preliminary injunction show no equity entitling the appellees, or either of them, to an injunction; and that the circuit court erred in holding and deciding that the use of the dredger Python by any of the appellants could be an infringement of the Bowers patents. And upon the part of the appellees that under the law Concanon has no right to use the dredger Python outside of the licensed territory. At this point the court naturally stops to consider the question, which presents itself to the judicial mind, viz. what is there in this case to bring it within the jurisdiction of the United States courts? The laws of the United States declare that the circuit courts shall have jurisdiction "of all suits at law or in equity arising under the patent or copyright laws of the United States." Rev. St. § 629, subd. 9. "This jurisdiction shall be exclusive of the courts of the several states." Id. § 711, subd. 5. Does this suit arise under the patent laws of the United States, or is it a suit upon a contract in relation to a patented dredging machine, which does not involve any construction of the patent laws, or the force and validity of the complainants' patents? The jurisdiction, as presented by these questions, has engaged the attention of courts in a great variety of cases. It has repeatedly been held that the national courts have no right, irrespective of adverse citizenship, to entertain suits for the amount of an agreed license or royalty, or for the specific execution of a contract for the use of a patent, or of other suits where a subsisting contract is shown governing the rights of the parties in the use of an invention; and that such suits not only may, but must, be brought in the state courts. Wilson v. Sandford, 10 How. 99, 13 L. Ed. 344; Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357; Albright v. Teas, 106 U. S. 613, 1 Sup. Ct. 550, 27 L. Ed. 295; Manufacturing Co. v. Hyatt, 125 U. S. 46, 52, 8 Sup. Ct. 756, 31 L. Ed. 683; Felix v. Scharnweber, 125 U. S. 54, 58, 8 Sup. Ct. 759, 31 L. Ed. 687; Marsh v. Nichols, Shepard & Co., 140 U. S. 344, 355, 11 Sup. Ct. 798, 35 L. Ed. 413; Wade v. Lawder, 165 U. S. 624, 17 Sup. Ct. 425, 41 L. Ed. 851; Pratt v. Coke Co., 168 U. S. 255, 260, 18 Sup. Ct. 62, 42 L. Ed. 458; Goodyear v. Day, 1 Blatchf. 565,

Fed. Cas. No. 5,568; Blanchard v. Sprague, 1 Cliff. 288, Fed. Cas. No. 1,516; Merserole v. Collar Co., 6 Blatchf. 356, Fed. Cas. No. 9,488; Fruit Jar Co. v. Whitney, 2 Ban. & A. 30, Fed. Cas. No. 3,133; Trading Co. v. Glaenzer (C. C.) 30 Fed. 387; Williams v. Sand Co. (C. C.) 35 Fed. 369; Washburn & M. Mfg. Co. v. Cincinnati Barbed-Wire Fence Co. (C. C.) 42 Fed. 675, 678; Routh v. Boyd (C. C.) 51 Fed. 821; Montgomery Palace Stock-Car Co. v. Street Stable-Car Line (C. C.) 43 Fed. 329; Shoe Co. v. Bryant (C. C.) 81 Fed. 521. The object and purpose of the patent law is to create and preserve a monopoly in the patented invention in favor of the patentee. "The rights of the patentee in the patented invention, considered as an article of property, and the obligation into which he enters with others as to his ownership or enjoyment, are matters collateral to the existence and continuance of the monopoly, dependent upon it, indeed, but not affecting it; and capable of assertion or repudiation without impairing the exclusive privilege which it bestows. Until, therefore, a controversy arises involving the existence or preservation of the monopoly, there can be no case under the patent laws." 3 Rob. Pat. § 856, and authorities there cited. There are a few of the earlier cases, which, contrary to the views we have expressed, held that any breach of condition by the licensee, even for the nonpayment of royalties or license fees, forfeited his license, and made him an infringer of the patent. This, at first blush, would seem to be in harmony with the general nature of a license, but in the application of these principles two difficulties arose: "One, that it permits the licensor to inflict the extreme penalty, of his own motion, for every trifling violation of his contract by the licensee; the other, that in suits for infringement, when a license is set up as a defense, and its forfeiture alleged, a multiplicity of issues may arise, not involving the actual merits of the cause, and preventing ultimate justice to the parties. To avoid the first of these difficulties, the doctrine has been modified by the courts so far as to require an express stipulation to that effect in the license, in order for a mere breach of condition to work a forfeiture. To overcome the second, later decisions hold that licenses containing express stipulations for their forfeiture are not ipso facto forfeited upon condition broken, but remain operative and pleadable until rescinded by a court of equity." 2 Rob. Pat. § 822. The doctrines announced in the decisions referred to have never been followed by the supreme court of the United States. The general principles contained in the decisions we have cited are in accord with the views entertained by all the courts at the present day. It is true that several of them can be readily distinguished in their facts from the present case, and that all cases should be decided in the light of the particular facts presented by the case in hand. But, after a careful examination of all the authorities, we are irresistibly led to the conclusion that under the facts of this case the United States courts have no jurisdiction to determine the questions involved therein. This is clearly the settled law, unless it can be said, because it is alleged in the bill, and not denied, that the act of Concanon in taking the Python outside of the licensed territory "is an infringement upon said above-specified claims of said patents" (referring

to claims of different patents held and owned by complainants); in other words, that the acts of Concanon amount, ipso facto, to a forfeiture of defendants' rights, and constitute an infringement to the same extent as they would had he constructed a new machine which did infringe upon the claims of complainants' patents. While it is true that there is no specific denial of the language of the bill that defendants had infringed upon complainants' patents, yet the affidavits used upon the hearing set up a right in Concanon, which, if sustained, would allow him to use the Python. The averment of infringement is to be construed with reference to these facts. The question as to whether there has been any infringement depends upon the construction that should be placed by the courts upon the covenants contained in the contract, and not upon the construction of any act of congress in relation to patents. As was said in Routh v. Boyd, supra: "The character of the complaint must be determined from the express and implied stipulations of the contract." The pleader here, as there, "with great prolixity of averment" sets forth that the licensee had failed to perform the contract, and that all his rights had ceased, and become forfeited, and deduces as a conclusion from the premises that the defendants are infringing complainants' patents; but whether they are invading the rights of the complainants "depends on the question whether the conditions of the agreement have been performed or not.   *   *   *   The primary and controlling question   *   *   *   is whether the agreement has been performed or violated. If it has been performed, the plaintiff has no cause of action. If it has been violated, he has a cause of action for its breach.   *   *   *   What is said about the infringement of the patent is incidental, and has no force until the question of the breach of the agreement is first settled in favor of the plaintiff." It cannot, therefore, be said that the controversy in this case is one arising under the patent laws.

In Wilson v. Sandford, supra, a suit was brought in the circuit court of the United States to set aside a contract made by complainant, Wilson, with the defendants, by which he granted them permission to use, or vend to others to be used, "one of Woodworth's planing machines, in the cities of New Orleans and Lafayette"; and to obtain an injunction against the further use of the machine upon the ground that it was an infringement of his patent rights, which were fully set forth in the bill. Complainant averred that he was the assignee of the monopoly in the territory mentioned, and that the contract he had made with the defendants had been forfeited by their refusal to comply with its conditions. The matter in controversy between the parties arose under the contract, and it did not appear that the sum in dispute exceeded $2,000. The defendants demurred to the bill, and at the final hearing the demurrer was sustained, and the bill dismissed. The complainant took an appeal from the decree of dismissal to the supreme court; and the court, after construing the provisions of the seventeenth section of the patent act of July 4, 1836 (5 Stat. 124), dismissed the appeal because the sum in dispute did not exceed $2,000. An examination of the seventeenth section shows that, if it had been a case "arising under any law of the United States granting or confirming to inventors the exclusive

right to their inventions or discovery," the appeal would lie without any reference whatever to the sum in dispute. The question there presented was identical with the question under discussion, namely, does this suit arise under the patent laws of the United States or under the provisions of a contract? The court, with reference to this question, said:

"Now, the dispute in this case does not arise under any act of congress, nor does the decision depend upon the construction of any law in relation to patents. It arises out of the contract stated in the bill, and there is no act of congress providing for or regulating contracts of this kind. The rights of the parties depend altogether upon common-law and equity principles. The object of the bill is to have this contract set aside, and declared to be forfeited; and the prayer is 'that the appellant's reinvestiture of title to the license granted to the appellees by reason of the forfeiture of the contract may be sanctioned by the court,' and for an injunction. But the injunction he asks for is to be the consequence of the decree of the court sanctioning the forfeiture. He alleges no ground for an injunction unless the contract is set aside. And, if the case made in the bill was a fit one for relief in equity, it is very clear that whether the contract ought to be declared forfeited or not in a court of chancery depended altogether upon the rules and principles of equity, and in no degree whatever upon any act of congress concerning patent rights. And whenever a contract is made in relation to them which is not provided for and regulated by congress, the parties, if any dispute arises, stand upon the same ground with other litigants as to the rights of appeal."

In Hartell v. Tilghman, supra, the question of jurisdiction was again presented and discussed. There, as here, the parties to the suit were citizens of the same state; there, as here, a contract had been entered into for the use of a certain patented machine, which, as here, it was alleged had been violated; and there, as here, the defendant was charged as an infringer. The court, after quoting subdivision 9, § 629, Rev. St., and section 55 of the act of July 8, 1870 (16 Stat. 206), and stating that these provisions were substantially the same as the act of 1836, discussed at considerable length the question whether the suit arose under the provisions of the patent laws or under the provisions of the contract, and came to the conclusion that the case was one in relation to a contract, and was not cognizable in a court of the United States by reason of its subject-matter. The opinion quotes with approval the views expressed by Chief Justice Taney in Wilson v. Sandford, and cites authorities in support thereof. Among other things, Mr. Justice Miller, who delivered the opinion of the court, said:

"We do not agree that either party can, of his own volition, declare the contract rescinded, and proceed precisely as if nothing had been done under it. If it is to be rescinded, it can be done only by a mutual agreement, or by the decree of a court of justice. If either party disregards it, it can be specifically enforced against him, or damages can be recovered for its violation. But, until so rescinded or set aside, it is a subsisting agreement, which, whatever it is, or may be shown to be, must govern the rights of these parties in the use of complainants' process, and must be the foundation of any relief given by a court of equity."

And in the course of his opinion, touching the question whether the suit arises under the patent laws or under the contract, he gave the following apt illustration:

"If a man owning a tract of land, his title to which is a patent from the United States, should sell or lease that land, and a controversy should arise

between him and his vendee or lessee as to their rights in the premises, it could not be said that any suit brought by the vendor to assert his rights was a suit arising under the land laws of the United States; and this would be beyond question if the defendant, admitting the title of plaintiff to the land, should make no other defense than such as was founded in rights derived from plaintiff by contract. That is the case before us, with the variance that plaintiff's title is to a patent for an invention instead of a patent for land."

A similar illustration might well be given in relation to controversies over mining claims located and patented under the laws of the United States. There was a vigorous dissent on behalf of three justices from the conclusions reached by the court. But the views expressed and conclusions reached by the distinguished justices who wrote the opinions of the court in Wilson v. Sandford and Hartell v. Tilghman have ever since been maintained. In Manufacturing Co. v. Hyatt, supra, which came before the court upon a writ of error to the city court of New York, the court held that an action upon an agreement in writing, by which, in consideration of a license from a patentee to make and sell the invention, the licensee acknowledges the validity of the patent, and promises to pay certain royalties so long as the patent shall not have been adjudged invalid, is not a case arising under the patent laws of the United States, and is within the jurisdiction of the state courts, and cannot be reviewed by the supreme court on writ of error.

In Wade v. Lawder, supra, which came before the court upon a writ of error to the supreme court of Missouri, the court held that, where a suit is brought on a contract of which a patent is a subject-matter, either to enforce such contract or to annul it, the case arises on the contract or out of a contract, and not under the patent laws; and, if brought in a state court, the supreme court is without appellate jurisdiction to review the judgment unless it affirmatively appears that a right under the laws of the United States was properly set up and claimed, which was denied by the state court. And in Pratt v. Coke Co., supra, which was an ordinary action of assumpsit upon the common counts for the price of a patented machine, and came before the court upon a writ of error to the supreme court of Illinois, the only federal question which was presented by the record related to the admission by the court of evidence tending to show that the patents issued to the plaintiffs were infringements upon prior patents issued to one Springer. It was contended upon the trial that the state court, in admitting such testimony, assumed jurisdiction of a patent case, in violation of the provisions of section 711, Rev. St. In the course of the opinion the court said:

"The action under consideration is not one arising under the patent right laws of the United States in any proper sense of the term. To constitute such a cause, the plaintiff must set up some right, title, or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction, of these laws. Starin v. City of New York, 115 U. S. 248, 6 Sup. Ct. 28, 29 L. Ed. 388; Germania Ins. Co. v. Wisconsin, 119 U. S. 473, 7 Sup. Ct. 260, 30 L. Ed. 461. The state court had jurisdiction both of the parties and the subject-matter as set forth in the declaration, and it could not be ousted of such jurisdiction by the fact that, incidentally to one of these defenses, the defendant claimed the invalidity of a certain patent. To hold that it has no right to introduce evidence upon this subject is to do it a wrong and deny it a

remedy. Section 711 does not deprive the state courts of the power to determine questions arising under the patent laws, but only of assuming jurisdiction of 'cases' arising under those laws. There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint, or declaration—sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals."

In the present case no question is presented as to the validity of any of the appellees' patents. There is no question in the case that involves the construction of any act of congress in relation to the patent laws. All the cases hold, where the question is discussed, that suits growing out of contracts made in relation to patent rights are governed by the general principles of law and equity, and not by the patent laws, and are triable in the state courts, and that the rights of the patentee under the patent laws of the United States must be directly, and not collaterally, brought in issue to give the United States courts jurisdiction. The decree of the circuit court is reversed, and cause remanded, with instructions to dismiss the bill.