AMERICAN GRAPHOPHONE CO. v. VICTOR TALKING MACH. CO. et al.

(Circuit Court, D. New Jersey.   January 3, 1911.)

1. PATENTS (§§ 214, 265*)—SUIT FOR INFRINGEMENT—EFFECT OF LICENSE.

A license under a patent for a stated term cannot be terminated before the expiration of such term except by mutual agreement of the parties on the adjudication of a court, and the licensor cannot by himself declaring a forfeiture maintain a suit under the patent laws for infringement against the licensee.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 321–327, 407–409; Dec. Dig. §§ 214, 265.*]

2. PATENTS (§ 214*)—LICENSE—REVOCATION.

Where a contract provides for an exchange of licenses to manufacture under specified patents severally owned by the respective parties, the consideration being such mutual agreements, one party cannot elect to abrogate or rescind it with respect to a single license while retaining it in effect as to the others.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 321–327; Dec. Dig. § 214.*]

In Equity.   Suit by the American Graphophone Company against the Victor Talking Machine Company and Eldridge R. Johnson.   On demurrer to bill.   Demurrer sustained.

Affirmed in 188 Fed. 428.

John W. Griggs, C. A. L. Massie, and Philip Mauro, for complainant.

Horace Pettit, for defendants.

CROSS, District Judge.   The complainant has filed its bill of complaint against the Victor Talking Machine Company and Eldridge R. Johnson, alleging that they have infringed patent No. 688,739, issued to one Jones, December 10, 1901, and duly assigned to the complainant, and praying for an injunction and an accounting of profits and damages in the usual form in such cases.   It further appears by the allegations of the bill that the patent in suit has been upheld by the adjudications of several Circuit Courts of Appeals; also, that the defendants held the complainant's written license to manufacture under the patent from December 8, 1903, to June 3, 1907, when that license was annulled and canceled by another of the latter date which was substituted in its place.   Both of the above-mentioned licenses are referred to in the bill of complaint and made a part thereof, and copies are annexed thereto as Exhibits B and C.   The bill further alleges that on or about May 11, 1907, the defendants renounced and repudiated said license of June 3, 1907, and their obligations thereunder, notwithstanding which they have continued to use, and are still using, the process set forth in, and claimed by, the said Jones patent.   The allegations upon which said renunciation and repudiation are predicated are set forth in the following paragraphs of the bill:

"(18) More particularly, your orator shows that said defendants Victor Talking Machine Company and Eldridge R. Johnson did on or about May 11, 1907, file or cause to be filed in the United States Patent Office certain

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

affidavits and amendments and claims and arguments, which were by them intended to have, and did have, the legal effect of claiming for said Johnson, on behalf of said Victor Talking Machine Company, as his assignee, the very invention previously awarded to your orator as assignee of said Joseph W. Jones, by the adjudication of said Court of Appeals in said suit against said Universal Talking Machine Manufacturing Company to which suit said Johnson and said Victor Talking Machine Company were privies as aforesaid; that subsequently said Johnson and said Victor Talking Machine Company did procure the issuance on August 11, 1908, to the latter as assignee of the former of United States letters patent No. 896,059, with claims substantially identical in scope and legal effect with the two claims of your orator's said Jones patent here in suit; that thereafter, on or about October 4, 1909, said Victor Talking Machine Company (with the approval and ratification, as your orator believes and charges, of said Eldridge R. Johnson) did file its bill of complaint in the United States Circuit Court for the Southern District of New York, charging your orator with infringement of said Johnson patent No. 896,059, last referred to; and in support of its charge did show and prove that your orator was practicing the very process already disclosed and patented to your orator by your orator's said Jones patent.

"(19) And still more particularly, your orator shows that when your orator by its proofs in opposition to the suit last referred to on said Johnson patent had established that the claims of said Johnson patent were substantially identical with the claims of your orator's Jones patent aforesaid, and were anticipated by the latter—thereupon said Johnson and said Victor Talking Machine Company introduced further adequate proof that the invention of the defendants' said Johnson patent is substantially identical with the invention of your orator's said Jones patent, and thereafter, in rebuttal proofs, the said Johnson and said Victor Talking Machine Company, in defiance of the prior adjudication and in disregard of their contract-obligations, undertook to adduce, and over your orator's objections and protests did adduce, evidence intended by said Johnson and said Victor Talking Machine Company to prove that said Johnson had anticipated said Jones in the production of said invention, and that said Jones was not the true and first inventor of the process patented in and by your orator's said Jones patent—which, if true, would have the legal effect of invalidating your orator's said Jones patent, and thereafter said Johnson and said Victor Talking Machine Company have persisted in attempting to prove said invention to have been made by said Johnson and not by said Jones, and to prove that your orator in practicing its own patented Jones process is infringing said Victor Talking Machine Company's said Johnson patent."

The defendants have separately demurred to the bill of complaint, assigning various causes therefor, which, however, need not be specifically set forth. It is sufficient to say that they fairly raise the question to be considered later. An examination of the license agreement of June 3, 1907, shows that it was to continue in force until October 9, 1923. No royalties, however, were to be paid upon any patent therein mentioned subsequent to its expiration or declared invalidity. The agreement in substance provided for a mutual exchange of licenses to manufacture under certain specific patents severally owned by the respective parties thereto. The consideration of the agreement was manifestly the mutual agreement and undertakings of the parties, each to allow the other the right to use its patents upon the therein prescribed terms and conditions. The agreement contained no clause of forfeiture nor any provision whereby one party could terminate it, either in whole or in part, without the consent of the other. It was, however, expressly provided therein that no royalties should accrue or be payable by the Victor Company to the Graphophone Company for the

right to manufacture under the Jones patent, until the expiration of the Berliner patent, No. 534,543, which date of expiration, it was further stipulated, should not be construed to be earlier than February 11, 1911. Recurring again to the bill of complaint, it will be found to contain no allegation that the above-mentioned agreement has been rescinded or broken, nor any prayer for a decree to that effect. So far as thereby disclosed, the agreement in all its provisions is in full force and effect, and binding upon the parties thereto, except, as already mentioned, it is alleged that the defendants by their conduct, as set out in the above quoted paragraphs, have renounced and repudiated the license to manufacture under the Jones patent.

[1] Under the circumstances, the bill of complaint, considered as a whole, does not state such a breach or rescission of the license as entitles the complainant to the relief it seeks. The contract of license under which the defendants are manufacturing has not been abrogated or annulled either by the decree of any court, the act of the parties, or by virtue of any provision therein contained. Its alleged renunciation or repudiation by the defendants rests merely upon the complainant's assertion. Whether the defendants by their conduct have afforded legal ground for its rescission at the instance of the complainant, the courts upon proper application will determine. It does not, however, lie in the mouth of one of the parties to determine the question and thereupon act in a manner which would only be justifiable in case it has been judicially determined. Before the defendants can be held as infringers of the patent in suit, the license in question must be disposed of, and that constitutes an independent question which must be determined by itself before this court will entertain a bill under the patent laws for its infringement. The rule thus stated is supported by the case of Comptograph Co. v. Burroughs Adding Machine Co. (C. C.) 175 Fed. 787, decided by Judges Kohlsaat and Sanborn, which presented a situation very like the present. The defendant in that case was a licensee under a patent and as such was guilty of conduct which the complainant insisted amounted to a repudiation of the license. The conduct referred to was described by the court in its opinion as follows:

"There can be no reasonable doubt that defendant by its counsel assumed a hostile position to complainant in said test suit before the Court of Appeals. It asserted various hostile positions, some of which were not insisted on by the then defendant. It set up title in itself to the Pike patent, No. 595,864, an alleged infringer of the Felt patent in suit. It asserted the Felt patent to be an abandoned experiment. It substantially sided with the original defendant. It charged various acts calculated to invalidate the patent in suit, such as delay, abandonment, the Pike patent as an anticipation. Felt's misrepresentation to the Patent Office—all this in face of the well-known doctrine that a licensee may not be heard to contest the validity of his licensor's patent. 'A licensor,' says our Court of Appeals in Indiana Mfg. Company v. J. I. Case Threshing Machine Company, 154 Fed. 365 [83 C. C. A. 343], 'has the right * * * to appellee's (the licensee's) silence respecting the validity and prima facie scope of the patent.' It further appears that it was to defendant's advantage to have the patent declared invalid, since large payments were thereby avoided. Complainant insists that

the defendant's course in the former case amounted to both a breach and repudiation of the license contract; that defendant, after said decision, proceeded to ally itself with another infringer and entered upon other alleged infringements; that it has by its silence apparently acquiesced in the annulment of the contract by complainant up to the time of bringing this suit (i. e., more than 18 months); that it has made no attempt to pay royalty, has made no reports, nor has it marked its machines under the patent in suit.

"All and each of the foregoing allegations are deemed to be fairly established by the record."

The court in disposing of the question says:

"It is a familiar rule that a party may not enter into a contract to do or pay something upon the happening of a certain event, and then proceed to make the happening of the condition impossible, and such a course is held to be ground for the cancellation of a contract; but, in the absence of a special condition of the contract to that effect, a licensor cannot by his own act revoke and terminate a license contract. He may file his bill for a rescission, but cannot terminate it by his own declaration, especially when some part of it has been performed. The law does not arm one party to a contract,' says Judge Gray in Standard Dental Mfg. Co. v. National Tooth Co. (C. C.) 95 Fed. 291, 'with the power to determine in his own favor a condition of this kind, and thus produce for the other party to the contract all the disabilities and consequences that would follow a forfeiture legally ascertained and declared. Even where the contract provides that the failure to pay shall render it null and void, the defendant has a right to be heard as to the facts upon which such annulment is made to depend. Forfeitures are not favored in equity, and the best-considered decisions hold that even licenses containing express stipulations for their forfeitures are not, ipso facto, forfeited upon conditions broken, but remain operative and pleadable until rescinded by a court of equity.'

"In Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357, the court says: '* * * We do not agree that either party can of his own volition declare the contract rescinded, and proceed precisely as if nothing had been done under it. If it is to be rescinded, it can be done only by a mutual agreement, or by the decree of a court of justice.'

"The same rule is held in Wilson v. Sanford, 10 How. 99, 13 L. Ed. 344, and in Hanifen v. Lupton (C. C.) 95 Fed. 465, and McMullen v. Bowers, 102 Fed. 494, 42 C. C. A. 470.

"We hold, therefore, that the license contract was not made void by the several acts of the parties thereto as above recited, that it is still in force, and that the plea which is hereby held to constitute a valid defense to the bill should be and is sustained."

Again, in American Street Car Advertising Co. v. Jones et al. (C. C.) 122 Fed. 803, Judge Ray says:

"This action can be maintained in equity because the license was granted, went into effect, and both parties recognized and acted under it. It could not be revoked or ended except by mutual consent. The defendants have never consented to its revocation. True, they say, the patent was invalid, but this is not an assent to a revocation of the license."

These authorities are in point and control this case.

[2] I might add, however, that in my judgment, in view of the character of this contract, even if the power of the complainant to elect to abrogate or rescind it were admitted, it could not elect to abrogate or rescind a part only and retain the balance of the contract, since, as already stated, by its terms it provides for an exchange of licenses. The covenants are mutual and interdependent, and constitute the consideration of the contract. To treat as

rescinded or abrogated a single license forming but a small part of the intermingled subject-matter of the contract, and at the same time, impliedly at least, retain the balance, did not lie in the power of the complainant. The demurrers must be sustained, with costs.

This conclusion disposes of the rule to show cause why a preliminary injunction should not issue, which was argued with the demurrers.

That rule will be discharged, with costs.